**In re Dolores A. FRICKER, Debtor.**

**Dolores A. FRICKER, Andrew Schwartz, Chapter 7 Trustee, Plaintiffs,**

**v.**

**CORESTATES BANK, N.A., Meridian Bank, Fidelity Bank, N.A., Hamilton Bank, Acceptance Associates of America, Inc., Herman Neumann, Arthur Lerner, Frank P. Lalley, R/S Financial Corporation, Defendants.**

**Bankruptcy No. 95–15015DAS.**
**Adv. No. 95–0775DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 14, 1996.

David M. Still, Philadelphia, PA, for Debtor.

Andrew N. Schwartz, Trustee, Philadelphia, PA.

Richard M. Beck, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, for Corestates Bank, Meridian Bank, Hamilton Bank, and R/S Financial Corp.

Salvatore F. Bello, Jr., Pzionka, Reilley & Bello, King of Prussia, PA, for Acceptance Associates of America, Inc.

Richard N. Anderson, Media, PA, for Herman Neumann and Arthur Lerner.

Thomas J. Speers, Solicitor for the Sheriff of Montgomery County, Plymouth Meeting, PA, for Frank P. Lalley.

Frederic J. Kinkler, Drinker, Biddle & Reath, Philadelphia, PA, for Mellon Mortgage Co.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A.  INTRODUCTION

This Opinion requires us to chronicle how DOLORES A. FRICKER ("the Debtor"), by her counsel, through inexplicable delays punctuated with obstinacy and bad manners, has frittered away decisions of this court setting aside the sale of her home and significantly reducing the principal claims against her.  We are now compelled to dismiss the instant proceeding seeking to revitalize the gains realized by the Debtor in our prior decisions because all of these claims are now barred by applicable state-law statutes of limitations.

### B.  FACTUAL AND PROCEDURAL HISTORY

The procedural history of this case reveals significant bankruptcy recidivism which appears to be due more to the refusal of the Debtor's counsel to timely prosecute the prior cases than the purposeful delays which often motivate multiple filings.  The filing of the instant underlying individual Chapter 7 bankruptcy case, on June 30, 1995, represented the fifth case ("Case V") which the Debtor, widowed during the course of these various filings, has commenced since her initial individual Chapter 13 case was filed on August 23, 1988 ("Case I").  In the interim between these cases, the Debtor and her late husband, Robert P. Fricker (collectively, the Debtor and the late Mr. Fricker are referenced as "the Debtors"), also filed Chapter 13 cases on May 24, 1989 ("Case II"), and May 23, 1993 ("Case III"), and the Debtor filed an individual Chapter 13 case on July 6, 1994 ("Case IV").

Easily the most eventful of these filings was Case II, which generated four lengthy published decisions, all entitled *In re Fricker*, and reported (and dated), respectively, 113 B.R. 856 (Bankr.E.D.Pa.1990) (*"Fricker I"*); 115 B.R. 809 (Bankr.E.D.Pa.1990) (*"Fricker II"*); 116 B.R. 431 (Bankr.E.D.Pa.1990) (*"Fricker III"*); and 131 B.R. 932 (Bankr. E.D.Pa.1991) (*"Fricker IV"*).  In *Fricker I* we decided, in a proceeding instituted shortly after the filing of Case II ("the 1989 Proceeding"), that a state-court judicial sale of the Debtors' home, located at 936 Welsh Road, Huntingdon Valley, Pennsylvania 19006 ("the Home"), should be set aside because it was entered on the basis of a confessed judgment, in violation of 41 P.S. § 407(a).  113 B.R. at 864–66.  In *Fricker II*, we addressed the question, left undecided in *Fricker I*, of the extent and status of the claim of Defendant Acceptance Associates of America, Inc. ("AAA") and certain banks ("the Banks") which provided funds to AAA, in light of the setting aside of the sale.  In the principal decision of that Opinion, we ordered this claim reduced to a secured claim in the amount of $40,000.00.  115 B.R. at 814–26.  In *Fricker III*, in light of the failure of the Debtors to amend their Chapter 13 plan to

conform to the *Fricker II* decision, as directed, we denied confirmation of the Debtors' outstanding Chapter 13 plan and dismissed that case. 116 B.R. at 439–42. In *Fricker IV*, we limited the attorneys' fees collectible for services in that case by their principal counsel, David M. Still, Esquire, then of the firm of Livingston & Still, P.C. ("Counsel"), to $13,874.11, because of Counsel's gross failures to comply with 11 U.S.C. § 329, Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 2016, and orders of this court.

Between the dismissal of Case II and the filing of Case III, the Debtors returned to the Montgomery County (Pa.) Court of Common Pleas ("the C.P. Court") to attack the sheriffs' sale of the Home in that forum. Despite the seeming ease of accomplishing this end with not only our decision in *Fricker I* of record, and the adoption of the interpretation of 41 P.S. § 407(a) critical to *Fricker I* in *Continental Bank v. Rosen,* 401 Pa.Super. 285, 291–92, 585 A.2d 49, 51 (1991); and *First Nat'l Bank of Allentown v. Koneski,* 392 Pa.Super. 533, 573 A.2d 591, 593–94 (1990), this result was not achieved by Counsel. Instead, on April 20, 1993, the C.P. Court entered an order *denying* the Debtors' petition to stay execution, set aside the sale, and strike the underlying confessed judgment. Despite this court's repeated questioning of all parties as to how a result so apparently inconsistent with *Fricker I*, which appears unassailable on the issue of the validity of the underlying judgment and the sheriff's sale in execution upon it, transpired, no clear explanation has been forthcoming. We understand, from these responses, that this result occurred, at least in part, due to procedural

shortcomings attributable to Counsel, rather than the merits.[1] We were also informed that the Debtors took an appeal from the C.P. Court's decision and that pending bankruptcies resulted in dismissal of that appeal. It is unclear to us whether any potential for revival of this appeal after the imminent closure of the present bankruptcy case occurs is a possibility.

In any event, Case III was filed on May 21, 1993, and dismissed without plan confirmation on March 22, 1994, when the Debtors failed to make necessary plan payments. The only matters arising in the course of Case III which were in any way relevant to the instant Proceeding were motions by N & L and the Banks seeking relief from the automatic stay to proceed to foreclose on the Home, which we denied.

Case IV, filed by only the then-widowed Debtor, featured the filing of an adversary proceeding ("the 1995 Proceeding") very similar to that presently before us, on January 24, 1995. Upon observing that the belated filing and lack of resolution of this Proceeding was precluding confirmation of a Chapter 13 plan in a case in a then over five months old, in disposing of pre-trial motions, we listed the trial on a must-be-heard basis on March 7, 1995. On the morning of March 7, 1995, Counsel informed us, in the presence of all other interested parties and their counsel, and the Debtor, that he alone was not prepared to proceed. In response to the justifiable outrage of all opposing counsel at such a belated request for a continuance, we entered an Order of March 7, 1995, dismissing this Proceeding in light of the Debtor's failure to prosecute it. Being unable to propose a

---

1. Defendants Herman Newmann and Arthur Lerner ("N & L") suggest that the result in *Fricker I* was undermined by the overruling of our decision in *In re Souders,* 75 B.R. 427, 433–39 (Bankr.E.D.Pa.1987), by *FRG, Inc. v. Manley,* 919 F.2d 850, 856–57 (3d Cir.1990). We beg to differ. As we explained in *In re Road Patch Services, Inc.,* 154 B.R. 869, 871–73 (Bankr. E.D.Pa.1993), the *FRG* decision limited only the scope of the *Souders* decision, holding that use of a confessed judgment was permissible in a transaction where its use was expressly agreed upon by counsel in the context of a settlement of major litigation. The *FRG* decision did not criticize the *Souders* result in concluding that the use of confessed judgments violated the due process rights

of parties, such as the Debtors, who were totally ignorant regarding the presence and the legal effect of a confession clause, even in a business context.

Furthermore, in 41 P.S. § 407(a), the Pennsylvania legislature expressly forbade the use of confessed judgments in actions to foreclose on "residential real property." The principal holding of *Fricker I*, adopted by *Rosen* and *Koneski, supra,* was that the underlying transaction between the Debtors and AAA, although involving, in part, a business deal, was nevertheless an action to foreclose upon the residential Home, rendering foreclosure an action in a "residential real property" subject to 41 P.S. § 407(a).

feasible plan without the relief sought in the 1995 Proceeding, the Debtor could not prevent the dismissal of Case IV on April 28, 1995.

The filing of the instant individual Chapter 7 case by the Debtor followed. On October 10, 1995, after the passing of the deadline for filing objections to discharge, the instant proceeding ("the Proceeding") was filed. The Proceeding remains one of the few matters of consequence arising in this case. After the meeting of creditors on August 7, 1995, the case trustee, Andrew Schwartz, Esquire ("the Trustee"), noted that he was "checking for assets" and, on September 5, 1995, the Trustee filed objections to certain exemptions claimed by the Debtor ("the Objections"). The Trustee has most recently indicated that he considers this to be a no-asset case and, as such, he does not intend to pursue the Objections, unless funds come into the hands of the Debtor as a result of the outcome of the Proceeding.

The Proceeding was initiated by the filing of what is titled a "Complaint to Set Aside Sheriff's Sale" ("the Complaint"), naming the Debtor and the Trustee (involuntarily) as plaintiffs. Named as defendants were AAA; four Banks; R/S FINANCIAL CORP. ("R/S"), the "servicing agent" for the Debtor's obligation to AAA and the Banks; N & L; and FRANK P. LALLEY, the Sheriff of Montgomery County ("the Sheriff"), who conducted the sale of the Home. The trial of the Proceeding was set for November 28, 1995.

The factual allegations of the Complaint are basically a summary of those concerning which we made a lengthy series of factual findings in *Fricker I*, 113 B.R. at 860–63. They describe the loan transaction of May 30, 1985, between the Debtors and AAA, the aftermath of which resulted in the Sheriff's sale of the Home to N & L on April 19, 1989.

After reciting most of the legal claims previously considered at *id.*, 113 B.R. at 864–73, the Complaint recites, in two paragraphs of new material, the payments allegedly made to AAA by the Debtors through April 19, 1989, and, in an additional paragraph, adds a claim for about $150,000 in monetary damages against AAA and the Banks.

On October 31, 1995, N & L moved to dismiss the Proceeding on the ground that, pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") 41(b), incorporated into F.R.B.P. 7041, the dismissal of the 1995 Proceeding barred the instant Proceeding under principles of *res judicata*. In order to preclude delay of the trial of the Proceeding, scheduled on November 28, 1995, we summarily dismissed this motion, believing it to be improbable that we could have been considered to have dismissed the 1995 Proceeding on its merits, when we had previously ruled in the Debtor's favor on the merits in *Fricker I*. N & L proceeded to appeal this decision.[2]

The Sheriff also filed a motion to dismiss the Proceeding as to him on November 14, 1995, due to his alleged lack of interest in the outcome. We also summarily denied that motion on November 17, 1995, believing that the inclusion of the Sheriff as a party would facilitate enforcement of any order invalidating the sale. AAA and three of the Banks[3] then moved to disqualify Counsel due to his claims as a creditor (listed at $5,000 in the Schedules), apparently for unpaid billings for services in Cases III and IV. This motion, too, was promptly denied after an expedited hearing on November 22, 1995, in order to clear off all pre-trial matters prior to the November 28, 1995, trial.

On November 28, 1995, despite having made no previous request for same as late as the hearing on the motion to disqualify counsel on November 22, 1995, nor having articu-

---

**2.** Since the denial of N & L's motion to dismiss was clearly an interlocutory order, it would appear that such an appeal could be taken, if and only if the district court grants N & L permission to do so pursuant to 28 U.S.C. § 158(a)(3).

**3.** Defendant FIDELITY BANK ("Fidelity") did not engage counsel and did not file any pleadings in this case. Although, at trial, the Debtor, per

Counsel, orally requested the entry of a default against Fidelity, we note that Fidelity is presently a portion of First Fidelity Bank, N.A., and is therefore no longer in existence as such. In light of our disposition of the Proceeding as to the other Defendants, we believe it necessary to also enter a judgment in favor of Fidelity despite its failure to respond to the Complaint.

lated any extraordinary circumstances, and despite the presence of vigorous opposition from all opposing counsel, gathered with prospective witnesses, the Debtor, per Counsel, requested and was granted a one-week extension of the trial. The trial in fact took place on December 5, 1995.

The sole witness at the trial was the Debtor. When denied a request to incorporate what proved to be incomplete portions of the record of the 1989 Proceeding into the instant record, the Debtor was called to principally regurgitate our findings based on this prior record. It was difficult to understand why this record, simply recounting our prior findings, could not have been equally effectively produced on November 28, 1995, or on March 7, 1995, in the context of the 1995 Proceeding.

In a colloquy during the course of this trial, the Debtor, per Counsel, orally moved to amend the March 7, 1995, Order to expressly reflect that the dismissal of the 1995 Proceeding had been without prejudice. *See* F.R.Civ.P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, ... any dismissal not provided for in this rule, ... operates as an adjudication upon the merits."). *See In re Jee*, 799 F.2d 532, 535 (9th Cir.1986); and 5 J. MOORE, FEDERAL PRACTICE, ¶ 41.14, at 41–176 to 41–177 (2d ed. 1995). We advised Counsel that any such motion would have to be submitted in written form. No such written motion has been forthcoming.

At the close of the trial, we solicited all parties, including Counsel, for suggested dates by which they would file post-trial briefs. Ultimately, the parties were given, by our standards, very extended deadlines: opening briefs were not due until January 23, 1996, and reply briefs were not due until February 6, 1996. Counsel for N & L provided the Debtor with a head start in determining his clients' position by handing up N & L's opening brief at the close of the proceedings on December 5, 1995.

We received no further relevant communiques from any of the parties until the afternoon of January 23, 1996, when Counsel hand-delivered a letter to us unilaterally requesting a two-week delay in the briefing, allegedly because of days lost in a large snow storm (which had occurred more than two weeks before on January 7 and 8, 1996) and his (unspecified) illness. We immediately wrote to and called all counsel and informed them of our denial of this request due to its vague, belated nature and the long period since the trial which had preceded it. In the confirming letter, we advised that

> [t]he matter before the court will be decided in our normal fashion, as soon as possible, on the basis of what is received. Parties not filing timely briefs may be subject to sanctions, either on motion of other interested parties or this court *sua sponte*.

We received a brief jointly filed by the three Banks other than Fidelity, *see* page 391 n. 3 *supra*, and R/S that day, and short submissions from AAA and the Sheriff later that week. Having received no submission on behalf of the Debtor, we called Counsel again. After several attempts, none of which ever elicited a response, we received word on January 31, 1996, that the Debtor's brief would be filed that day or the next day, and no later than Friday, February 2, 1996. No brief or explanation for the failure to supply same arrived. On February 7, 1996, a call to Counsel was met with a reply that Counsel was "sick" and no further word as to when any brief would be forthcoming. Counsel's office was then advised that we were obliged to proceed as we have, *e.g.*, to render our decision without a submission from the Debtor.

### C. DISCUSSION

1. *THE DEBTOR'S CAUSES OF ACTION ARE ALL PRESENTLY BARRED BY APPLICABLE STATUTES OF LIMITATIONS*

■ The primary thrust of the Complaint, as presaged by its title, and verified by most of its text, is an action to set aside the Sheriff's sale of the Home of April 19, 1989. Pertinent Pennsylvania state law, 42 Pa.C.S. § 5522(b)(5), provides as follows:

> **(b)** —The following actions and proceedings must be commenced within *six months:*
>
> .     .     .     .     .

(5) An action or proceeding to set aside a judicial sale of property (emphases added).

October 10, 1995, is clearly more than six months after April 19, 1989.

■ The additional claim for monetary damages, which is briefly referenced in the Complaint, does not appear to fall within the scope of 42 Pa.C.S. § 5522(b)(5). That claim instead appears to be subject to the longer residual Pennsylvania statute of limitations appearing as follows in 42 Pa.C.S. § 5527(6):

The following actions and proceedings must be commenced within six years:

.　　.　　.　　.　　.

(6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation).

Clearly, the claims asserted do not fall within the very limited scope of 42 Pa.C.S. § 5531, which is applicable only to actions against attorneys to enforce trusts and certain actions by the Commonwealth. Thus, a six-year statute of limitations applies.

All of the claims arose from actions which took place on or before April 19, 1989, and were, incidentally, the subject of the 1989 Proceeding, filed on May 24, 1989. *See Fricker I*, 113 B.R. at 859. The assertion of claims in the instant Proceeding, filed on October 10, 1995, obviously came beyond the six-year period.

It is difficult to conceive of any arguments which the Debtor could have made to avoid the consequences of a bar of all of her claims made in this Proceeding on the grounds that the applicable statutes of limitations have expired. None were suggested during the course of the trial. As noted by the observation that the underlying facts supporting these claims were alleged and proven in the 1989 Proceeding renders the observation that they had accrued prior to the commencement of the six-month and six-year periods elementary. *Cf. Butler v. Lomas & Nettleton Co.*, 862 F.2d 1015, 1019 (3d Cir.1988) (a sheriff sale vests ownership rights in the purchaser "at the fall of the auctioneer's hammer"). We have no submissions by the Debtor which respond to these arguments, which follow from limitations defenses properly pleaded by N & L and the Banks and R/S, and referenced clearly in the briefs of these parties, though intermingled with strains of various other arguments which we find less convincing. *See* pages 16–18 *infra.* The clarity and conclusiveness of this defense may explain Counsel's failure to offer submissions rather than any reasons based upon a snow storm which has occurred over a month ago and Counsel's alleged string of illnesses. Counsel, on behalf of the Debtor, appears simply to have no responses to make.

We do not consider it our function to conjure up arguments not made on behalf of the Debtor by Counsel, especially if Counsel is as evasive in addressing these issues as he has proven in fulfilling his commitment to file timely briefs. It is pointless to set up a series of straw-man arguments and knock them down merely to prolong this Opinion. However, several points relevant to limitations defenses generally, in light of the peculiar sequence of successive cases and related causes of action presented here, appear appropriate to raise.

■ First, it is clear that the presence of prior or even concurrent actions raising the same claims in this forum, *e.g.*, the 1989 Proceeding and the 1995 Proceeding, or in another forum, *e.g.*, the C.P. Court, do not toll the limitations periods otherwise applicable to this Proceeding. *See Stinson v. Kaiser Gypsum Co.*, 972 F.2d 59, 62–63 (3d Cir.1992); *Cardio–Medical Associates, Ltd. v. Crozer–Chester Medical Center*, 721 F.2d 68, 77 (3d Cir.1983); *Butler v. Sinn*, 423 F.2d 1116, 1118 (3d Cir.1970); and *Royal–Globe Ins. Cos. v. Hauck Mfg. Co.*, 233 Pa.Super. 248, 252, 335 A.2d 460, 462 (1975). Therefore, the histories of the 1989 Proceeding and the 1995 Proceeding, and the possible presence of the C.P. Court action, have no effect on the running of the statute of limitations as to the claims made in the instant Proceeding.

■ Second, we note that 11 U.S.C. § 108 provides, in certain circumstances, that limitation periods are extended by bankruptcy

filings. However, each of the three subsections of § 108 refer to limitations periods which "ha[ve] not expired before the date of the filing of the petition." These provisions hence implicitly relate to pre-petition claims, see In re Dougherty, 187 B.R. 883, 885–86 (Bankr.E.D.Pa.1995), concerning which the limitations period had not yet expired as of the date of the bankruptcy filing. However, if the applicable state-law time period has in fact run out before a bankruptcy case is filed, as is the case here, then § 108 is of no help to a debtor in preserving a claim. See In re Shields, 148 B.R. 783, 786–87 (Bankr.E.D.Pa. 1993).

Although we can therefore conceive of no basis on which it can be successfully argued that the claims asserted in this Proceeding can survive in the face of the defense of applicable statutes of limitations, we should offer two caveats. First, this decision has no effect on the state court action. The Debtor may be able to resume prosecution of her appeal from the C.P. Court's denial of her petition to strike the underlying judgment and set aside the Sheriff's sale through that vehicle. The vitality of such an action is, of course, dependent on that action's posture in the state court system, and that issue must be passed upon by the applicable state court.

Second, this court is not purporting to rule whether the results in *Fricker I* and *Fricker II* must be deemed vacated through the combined effect of dismissal of Case II and the application of 11 U.S.C. § 349(b)(1)(B). We note that we warned the Debtor, per Counsel, of the possible adverse consequences of § 349 were Case II dismissed, as opposed to converted or somehow kept alive, in *Fricker III*, 116 B.R. at 442–43 n. 3. In *Fricker IV*, 131 B.R. at 942 n. 2, we suggested that the Debtor's continued failure to heed our warnings could in fact have undermined these decisions.

We note that § 349(b) indicates that, "for cause," a court may "order ... otherwise" to offset the normal effect of a dismissal order as requiring vacation of orders resulting from certain types of proceedings arising therein. See In re Sadler, 935 F.2d 918, 921 (7th Cir.1991); and Norton v. Hoxie State Bank, 61 B.R. 258, 260 (D.Kan.1986). How-

ever, § 349(b) does not apply to actions not specifically enumerated therein. See In re Searles, 70 B.R. 266, 269–70 (D.R.I.1987); In re Newton, 64 B.R. 790, 792–94 (Bankr. C.D.Ill.1986); and In re BSL Operating Corp., 57 B.R. 945, 952 (Bankr.S.D.N.Y.1986). The precise nature of the 1989 Proceeding has never been identified, although it might be logical to consider it as arising under 11 U.S.C. § 544.

2. *THIS COURT DOES NOT RELY ON ANY OF THE ALTERNATIVE DEFENSES ASSERTED BY THE DEFENDANTS IN RENDERING THIS DECISION*

■ The brief submitted on behalf of the Banks and R/S is devoted mainly to assertions that the Proceeding is barred by *res judicata* arising from both (1) the C.P. Court's purported final disposition, adverse to the Debtors, of the merits of the claims raised in the Proceeding; and (2) our dismissal of the 1995 Proceeding. The argument presented as to the 1995 Proceeding is that, although the dismissal was not specifically pursuant to F.R.Civ.P. 41(b), that dismissal resulted from the Debtor's failure to prosecute the 1995 Proceeding, and, therefore, in the absence of a specific order to the contrary, that dismissal must be considered to have been with prejudice, under F.R.Civ.P. 41(b). Suffice it to say that these and any other arguments that *res judicata* operates against the Debtor are significantly diminished in appeal by our observation that, in *Fricker I* and *Fricker II,* we ourselves entered the first and only decisions on the merits of the claims raised in this Proceeding in *favor* of the Debtor. While recognizing the weight of the authorities cited by the Banks and R/S as to the ordinary effect of a F.R.Civ.P. 41(b) dismissal, we note that the instant facts include a significant and bizarre twist absent from any other known case: an initial decision on the merits in favor of the party whose claims are sought to be barred by that party's subsequent transgressions.

In light of these very practical and apparently unique distinctions between the facts of the authorities relied upon by the Banks and R/S and those of the instant case, we believe

that reliance on *res judicata,* in addition to the expiration of the applicable statutes of limitations as to the specific claims at hand, would be misplaced. It is irritating, though true to form, to observe that Counsel never undertook to file the necessary motion to amend the March 7, 1995, Order in the 1995 Proceeding to attempt to expressly preclude its *res judicata* effect on the underlying merits of the Proceeding. *See* page 392 *supra.* However, this omission cannot change our deeply-formed conclusion that allowing the F.R.B.P. 41(b) dismissal of the 1995 Proceeding on procedural grounds to wipe out our own prior decision on the merits in the 1989 Proceeding on the merits of the same claims would reflect an unprincipled exaltation of form over substance.

N & L raises these and several other arguments. The only other argument of any appeal is the contention that the Debtor's claims that the sheriff's sale could also be avoided under 11 U.S.C. § 548 cannot not be sustained. However, we reach this decision solely because of the now-conclusive reasoning of the Supreme Court in *BFP v. Resolution Trust Corp.,* —— U.S. ——, ——, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994), and not for the reasons stated by N & L in their brief. We note further that, in any event, we did not rely upon § 548 in rendering our decision in *Fricker I. See* 113 B.R. at 865.

On the other hand, we totally reject N & L's apparent argument that 11 U.S.C. § 349(b) bars the Debtor from raising issues in the context of this case that she previously raised in proceedings in the ultimately-dismissed Case II and Case IV. *Compare, e.g., In re Bernhardt,* 186 B.R. 889, 890 (Bankr. E.D.Pa.1995) (while the dismissal of a prior case may eliminate the potential *res judicata* effect in favor of a victorious debtor in proceedings decided in the course of that case, it does not preclude the re-litigation of those issues by the debtor in a new proceeding in a later case).

We therefore confine the basis of our decision that the instant Proceeding must be dismissed solely to the defenses raised which are based upon the applicable statutes of limitations.

### 3. RESOLUTION OF THE ISSUES REMAINING IN THIS CASE

We have concluded that this Proceeding must be dismissed. Nevertheless, remaining for resolution in the underlying main bankruptcy case are the issues of the future course of this case, what measures must be taken in light of Counsel's unprecedented flaunting of this court's briefing Orders, and a review of the compensation payable by the Debtor(s) to Counsel for his services throughout the course of all of these cases.

We understood the Trustee to have expressed an intention to withdraw the Objection and file a no-asset report in this case if the Proceeding were dismissed. *See* page 390–91 *supra.* We will schedule a status hearing to confirm the Trustee's expressed intentions in light of the dismissal of the Proceeding, and to assure that these intentions are converted into prompt action.

Also remaining for resolution is the response that this court should make to the conduct of Counsel in frustrating the briefing schedule set out by this court. We must note, initially, that Counsel's past performance in Case II rendered the conduct here predictable, if inexcusable. Counsel began the lengthy series of events in *Fricker I* by failing to appear at a hearing before Judge Fox on a motion seeking to obtain relief from the automatic stay and then belatedly filing the 1989 Proceeding. 113 B.R. at 859. Case II was ultimately dismissed primarily because Counsel failed to submit a Chapter 13 plan as directed. *See Fricker III,* 116 B.R. at 434. Counsel appropriated sums deposited in escrow by the Debtors towards his counsel fees without filing either a fee application, as directed, or a Statement of Compensation. *See Fricker IV,* 131 B.R. at 934–35, 942; and *Fricker II,* 115 B.R. at 813.

This course of conduct resumed in Cases III and IV, as exemplified by Counsel's failure to proceed with trial on March 7, 1995, resulting in the dismissal of the 1995 Proceeding which several Defendants have, not without at least some merit, pressed as a basis for dismissal of this Proceeding in and of itself.

The same sort of disregard for court directives appears to have led to the dismissal of the Debtors' petition attacking the Sheriff's sale of the Home in the C.P. Court. A similar lack of consideration for other counsel and litigants was manifested by the last-minute request for a one-week continuance of the trial of the Proceeding.

However, the most egregious actions of Counsel, which this court cannot let pass if it wishes to enforce its directives to ensure the swift and orderly administration of justice, are the failures of Counsel to adhere to even a briefing schedule which was frankly extended beyond any this court has recently entered solely to accommodate Counsel. The last-minute request for an extension, based upon a cause as remote as a long-past snow storm and as capable of fabrication as an assertion of Counsel's own conveniently-sudden illnesses, are excuses so transparent that to give them any credence at all further undermines the orderly process of justice. Of course, no brief has been produced by even the deadline to which Counsel sought an extension on January 23, 1996, nor by the deadlines to which Counsel repeatedly assured us that he would adhere. Moreover, he then lacked the common decency to advise us that these deadlines would not be met. We are appalled by this conduct, and, unless facts unknown to the court are presented at a hearing scheduled per the enclosed Order, we are prepared to fully exercise our powers of discretion to properly discourage such flaunting of our Orders. See *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1224–25 (3d Cir.1995) (bankruptcy court possesses inherent power to sanction practitioners before it); and *In re Assaf*, 119 B.R. 465, 467–68 (E.D.Pa.1990) (sanction of suspension from practice in bankruptcy court upheld).

Finally, we must express our concern regarding the fees which the Debtor has paid to Counsel over the course of these bankruptcy cases. One of the reasons that we granted Counsel the dispensation of retaining $13,741.11 of the fees billed to the Debtor in Case II, despite Counsel's serious lapses in fee disclosures, was our observation that, by employing imagination and vigor, Counsel had achieved a fairly good result for the Debtors. 131 B.R. at 944. Since it appears that Counsel's own subsequent actions have now resulted in loss of what had been gained, rather than a net benefit to the Debtor, it is difficult to justify the imposition of significantly more fees upon the Debtor than were allowed in *Fricker IV*. Nevertheless, at the trial, the Debtor testified that she had already paid about $15,000 to Counsel since his receipt of the award of about $14,000 to him in Case II, for a total of about $30,000. The Schedules, entered in the instant record, indicate that Counsel claims to be owed $5,000 and that the Debtor is obligated to pay $1,750 more for his services in this case.

Of course, as we indicated in *Fricker IV,* the long-standing symbiotic relationship between the Debtor and Counsel, who filed all but Case I on her behalf, clouds the issue of who, if anyone, is the victim of the other. 131 B.R. at 943. We are reluctant to penalize debtors victimized by slipshod counsel. However, since the Debtor continued to retain counsel in the face of our numerous rebukes of Counsel in her presence, the potential remains that all or most of Counsel's actions have been the direct result of the Debtor's instruction to Counsel, or have been taken to achieve a hidden agenda of the Debtor.

In any event, the propriety of the fees charged to the Debtor by Counsel are an issue which this court is obliged to address. It will possibly be valuable to have the Debtor present at the hearing on this issue and therefore she is directed to attend. We are also sending a copy of this Opinion directly to the Debtor in order to assure ourselves that she receives this court's analysis of the source of her present difficulties.

### D. CONCLUSION

An Order dismissing this Proceeding and scheduling a hearing on February 29, 1996, addressing the matters of further concern to this court in completing administration of the Debtor's main case is attached hereto. [Editor's Note: Order deleted for purposes of publication.]