## In re Dolores A. FRICKER, Debtor.

### Bankruptcy No. 95–15015DAS.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 28, 1996.

David M. Still, Philadelphia, PA (Prior Attorney), Jeffrey Goodman, Swartz, Campbell & Detweiler, Philadelphia, PA (Present Attorney), for Debtor.

Andrew N. Schwartz, Trustee, Philadelphia, PA.

Richard M. Beck, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, Corestates Bank, Meridian Bank, Hamilton Bank, and R/S Financial Corp.

Salvatore F. Bello, Jr., Pzionka, Reilley & Bello, King Of Prussia, PA, for Acceptance Associates of America, Inc.

Richard N. Anderson, Media, PA, for Herman Neumann and Arthur Lerner.

Thomas J. Speers, Solicitor for the Sheriff of Montgomery County, Plymouth Meeting, PA, for Frank P. Lalley.

Frederic J. Kinkler, Drinker, Biddle & Reath, Philadelphia, PA, for Mellon Mortgage Co.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

OPINION

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

Presently before this court is a motion ("the Motion") filed by R/S Financial Corp. ("the Movant"), seeking sanctions against David M. Still, Esquire, the Debtor's counsel ("Counsel"), pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9011. The relief sought is payment of the Movant's legal fees of $4,873.11 incurred in defending an unsuccessful adversary proceeding ("the Proceeding") initiated by Counsel on behalf of the Debtor, the result of which is reported as *In re Fricker*, 192 B.R. 388 (Bankr. E.D.Pa.1996) (*"Fricker V"*).

The Movant's grounds for seeking F.R.B.P. 9011(a) sanctions appear to be as follows: (1) Counsel signed and filed the Proceeding even though the cause of action set forth therein against, *inter alia*, the Movant had clearly accrued more than six years prior to the filing of the Proceeding, rendering the dismissal on limitations grounds, *see Fricker V, supra*, 192 B.R. at 392–94, inevitable; and (2) Counsel compounded the lack of merit in the Proceeding by delaying its adjudication through numerous requests for extensions and continuances and not adhering to established deadlines. *See id.* at 392, 396.

We find that the strong underlying merits of the claim and the unrealized potential arguments for evading the fateful limitations issue render the filing of the instant Proceeding far short of the patently frivolous or improperly motivated sort of extraordinary situation which would justify F.R.B.P. 9011 sanctions. We also note that counsel has already been sanctioned by a $250 fine payable to this court for his flouting of court deadlines, the equivalent of the only F.R.B.P. 9011 sanction ever imposed by this court, in *In re Geller*, 96 B.R. 564 (Bankr.E.D.Pa. 1989). Therefore, we will deny the Motion.

## B. FACTUAL AND PROCEDURAL HISTORY

On June 30, 1995, DOLORES A. FRICKER ("the Debtor") filed the instant underlying voluntary petition for relief under Chapter 7 of the Bankruptcy Code. This bankruptcy filing represented the fifth filing including the Debtor since August 23, 1988. All of the prior filings were Chapter 13 cases, several having been jointly filed with the Debtor's late husband Robert.

The history of these filings is set forth in *Fricker V*, 192 B.R. at 389–91, but bears some reiteration in resolving the Motion. In the second, most eventful bankruptcy case, filed by the Debtor with her late husband, Counsel instituted an adversary proceeding to set aside an April 19, 1989, judicial sale of the Debtor's residence, located at 936 Welsh Road, Huntingdon Valley, Pennsylvania ("the Home"). In an Opinion entitled *In re Fricker*, 113 B.R. 856 (Bankr.E.D.Pa.1990) (*"Fricker I"*), we decided that the judicial sale of the Home should be set aside because it was entered on the basis of a confessed judgment, in violation of 41 P.S. § 407(a). *Id.* at 864–66. However, following the failure of the Debtors to amend their Chapter 13 plan to conform to a reduction in the claim of the Movant's predecessor in *In re Fricker*, 115 B.R. 809, 827–28 (Bankr.E.D.Pa.1990) (*"Fricker II"*), we denied confirmation of the Debtor's outstanding Chapter 13 plan and dismissed that case in *In re Fricker*, 116 B.R. 431 (Bankr.E.D.Pa.1990) (*"Fricker III"*). To round out the picture, in a decision reported as *In re Fricker*, 131 B.R. 932 (Bankr. E.D.Pa.1991) (*"Fricker IV"*), we reduced Counsel's fees from a request of $54,128.09 to $14,741.11 due to his failure to make proper disclosures of same.

After the dismissal of the Debtor's second bankruptcy case, the Debtor, through Counsel, unsuccessfully attacked the April 19, 1989, judicial sale of the Home in the Court of Common Pleas of Montgomery County, Pennsylvania ("the CCP"). On April 20, 1993, the CCP entered an order denying the Debtor's petition to stay execution, set aside the sale, and strike the underlying confessed judgment. In *Fricker V*, 192 B.R. at 390, we expressed our uncertainty as to how such a result occurred, in light of the presence of our contrary prior decision in *Fricker I*. We could only conclude that this result was attributable to procedural shortcomings by Counsel, rather than the merits. *Id.* We

also noted that the Debtor had appealed this decision, but that this appeal was dismissed as a result of the stay arising from the later bankruptcy cases, referenced *infra*. *Id.*

Thereafter, the Debtor filed a third bankruptcy on May 23, 1993, which was dismissed when the Debtor failed to make necessary plan payments. On July 6, 1994, the Debtor filed a fourth bankruptcy petition. On January 24, 1995, the Debtor, through Counsel, instituted an adversary proceeding in the fourth case to set aside the judicial sale of the Home. This adversary proceeding was dismissed on March 7, 1995, when Counsel was not prepared to prosecute the action on the day we listed it for trial on a must-be-heard basis. Ultimately, the Debtor's fourth bankruptcy was dismissed because the Debtor was unable to propose a feasible plan in light of the fact that the aforementioned adversary proceeding had been dismissed.

On June 30, 1995, the Debtor commenced the instant bankruptcy case. On October 10, 1995, the Debtor, by Counsel, filed the Proceeding, again seeking to set aside the judicial sale of the Home, similar to the adversary complaints filed in the second and fourth bankruptcy cases. The factual allegations of the Complaint filed in the Proceeding were basically a summary of those concerning which we made a lengthy series of findings in *Fricker I*, 113 B.R. at 860–63. *See Fricker V*, 192 B.R. at 391.

In *Fricker, id.* at 392–94, we concluded that the action to set aside the judicial sale of the Home was now barred by the applicable state-law statute of limitations, Pa.C.S. § 5522(b)(5), which provides that an action to set aside a judicial sale of property must be commenced within six months from the sale. Since the sheriff's sale had occurred on April 19, 1989, and the Complaint was filed on October 10, 1995, the statute of limitations had clearly expired before the Proceeding was filed. *Id.* at 392–93. We are now called upon to address the issue of whether the filing of that Complaint violated F.R.B.P. 9011, and if so, what sanctions should be imposed.

However, before we begin our discussion, we must mention the occurrences in the course of administration of the Proceeding

that led this court to issue an order directing Counsel to pay a fine of $250 to this court. The trial of the Proceeding was ultimately scheduled on November 28, 1995. On that morning, despite having made no previous request for a continuance, Counsel requested a one-week delay of the trial. Over the protests of all of the assembled Defendants' counsel, we granted the continuance.

On December 5, 1995, we finally conducted the trial of the Proceeding. Virtually nothing additional to that previously more comprehensively presented in the trials of *Fricker I* and *Fricker II* was produced. *See Fricker V*, 192 B.R. at 392. At the close of the trial, we ordered all parties to file opening briefs by January 23, 1996, and reply briefs by February 6, 1996, by our standards a most relaxed briefing schedule. Nevertheless, on the afternoon of January 23, 1996, Counsel hand-delivered a letter requesting a two-week extension of the briefing deadline because of a previous snow storm (on January 7 and 8) and an (unspecified) illness. We denied that request. Briefs arrived from all parties except Counsel. On January 31, 1996, Counsel informed us that he would file the Debtor's brief on or before February 2, 1996. No brief nor an explanation for its absence materialized. On February 14, 1996, we issued *Fricker V*, in which we noted that we were "appalled" by Counsel's conduct in failing to file a brief as ordered and promised. 192 B.R. at 396.

In the Order accompanying *Fricker V*, we scheduled a hearing on February 29, 1996, to, *inter alia*, review the compensation received by Counsel in this case and all of the prior bankruptcy cases in which he represented the Debtor and her late husband, since the Debtor had indicated payment of about $17,500 fees in additional to the $14,741.11 previously allowed, and to consider whether and, if applicable, what sanctions should be imposed upon Counsel for violating this court's briefing schedule.

After a series of continuances of this hearing at the request of Counsel and the Debtor, who expressed a desire to obtain replacement counsel, the hearing was finally conducted on May 7, 1996. The only witness at

that hearing was the Debtor, who requested an accounting of her total fees, which by now exceeded $30,000, from Counsel. After this hearing, on May 8, 1996, we entered an order directing Counsel to file a Fee Application in this case and a break-down of all fees charged to the Debtor and her husband by May 17, 1996; to pay a monetary sanction of $250 to the Clerk of this court by May 24, 1996; and for all interested parties to brief the Motion by June 7, 1996.

Counsel paid the fine and was ultimately allowed the $1,520 fee sought in connection with this case. When the Debtor belatedly appeared at a hearing of June 25, 1996, to consider any objections she might have to the break-down of fees, that hearing was continued to July 9, 1996.

## C. DISCUSSION

Our legal analysis will begin by examining the applicable statute and relevant caselaw. The first step in this analysis is to determine if F.R.B.P. 9011(a), which provides as follows, was violated:

Rule 9011. Signing and Verification of Papers. (a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. *The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.* If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. *If a document is signed in violation of this rule, the court on motion or on its own initiative shall impose on the person who signed it, the represented party, or both, an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee (emphasis added).

Notably, F.R.B.P. 9011(a) provides that, if the Rule is violated, the court "shall" impose an appropriate sanction on the violating party. The Third Circuit Court of Appeals has made it clear that, once it is determined that F.R.B.P. 9011 is found to have been violated, a sanction is mandatory. *See In re Gioioso,* 979 F.2d 956, 960 (3d Cir.1992). There, the Court stated as follows:

"The use of 'shall' was deliberate and carefully considered, and was intended to overcome the reluctance of courts to assess sanctions against erring counsel and parties. The tone of the rule makes clear that although trial judges still retain substantial discretion, its exercise is now directed more to the nature and extent of sanctions than to initial imposition."

*Id.* at 960, quoting *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3d Cir.1986).

This court has expressed its opinion of the proper application of F.R.B.P. 9011 on several occasions, notably in *In re Smith,* 111 B.R. 81 (Bankr.E.D.Pa.1990); and *Geller, supra.* In *Geller* we stated that

[i]n the past, we have made plain our distaste for use of B.Rule 9011(a) and our belief that it should be very narrowly construed and applied. Thus, in *In re Arena,* 81 B.R. 851, 856–57 (Bankr.E.D.Pa.1988), citing *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482–85 (3d Cir.1987), we stated that B.Rule 9011(a) "should be sparingly employed." However, even at that, we compared the situation in *Arena* to "an 'abusive multiple-filing situation,' *compare In re Geller,* [74 B.R. 685 (Bankr.E.D.Pa. 1987) ]." In *In re Elfman,* [1988 WL 98776 (Bankr.E.D.Pa. Sept. 23, 1988) ], we

stated, in a brief, unpublished decision, that we would reserve application of B.Rule 9011(a) for use "only in 'exceptional circumstances,' where counsel's work product is patently frivolous and/or his motivations are improper." [*id.* at *1], citing *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 99 (3d Cir.1988). *Id.* at 567. Subsequently, in *Smith,* 111 B.R. at 85, we quoted the foregoing passage in *Geller* as our "synthesis" of the proper application of F.R.B.P. 9011.

The mere fact that a complaint is filed after the statute of limitations may have expired, *without analyzing the context in which the complaint was filed,* does not in and of itself constitute a F.R.B.P. 9011 violation which warrants the imposition of sanctions. We make particular note of the term "may" because we believe that circumstances existed here in which it could have been successfully argued that the statute of limitations did not bar the Proceeding. It must be recalled that the first action seeking to set aside the judicial sale of the Home, clearly filed within the statute of limitations, was successful on the merits. *See Fricker I.* However, in *Fricker III,* 116 B.R. at 439–42, solely because the debtors did not amend their Chapter 13 plan to conform to the *Fricker II* decision, we denied confirmation and dismissed that case. The instant Proceeding was clearly filed beyond the limitation period of six years after the sheriff's sale. But, as we pointed out in *Fricker V,* 192 B.R. at 394, the Debtor could have argued that the Proceeding was merely instituted to enforce the rulings in *Fricker I* and *Fricker II.* While such an argument would have required the Debtor to argue that 11 U.S.C. § 349(b) did *not* result in an automatic vacation of these rulings, *id.* at 394, such an argument would appear to have had a reasonable chance of success.

In his one-page brief addressing the Motion and at oral argument on May 7, 1996, Counsel advanced a few other arguments in support of the principle that dismissal of the Proceeding was not so pre-ordained as the Movant seems to think. First, Counsel argued that, although we concluded that the applicable statute of limitations barred the Debtor's causes of action, a statute of limitation can be waived by the Defendants' failure to plead it, *see In re Frascatore,* 98 B.R. 710, 718 (Bankr.E.D.Pa.1989), and therefore the Proceeding was not lacking in merit on its face. Next, Counsel contended that, under the Pennsylvania Debt Pooling Act, 18 Pa. C.S. § 7312 ("the DPA"), one of the bases of the Debtor's challenges to the claim of the Movant's predecessor, there is no statute of limitations. Finally, Counsel asserted that applying the doctrine of "the law of the case" and/or this court's allegedly broad equitable powers, the Debtor could have prevailed in the Proceeding by our refusing to apply the statute of limitations.

In his most concise brief and in argument, Counsel did not provide us with any case citation to support the latter two arguments, nor do we believe that any exists. We doubt that we could ignore an applicable statute of limitations on the basis of our raw equitable powers. The DPA was not the basis for our setting aside the sale of the Home; rather, it was 41 P.S. § 407(a). However, it is true that the limitations issue could have been waived. Further, limitations would not have barred an action to determine the mere effectiveness of the decision setting aside the sheriff's sale in *Fricker I.* Thus, the Debtor's potential success in the Proceeding was not so far-fetched as the Movant now contends.

In the past, we indicated that we would impose F.R.B.P. 9011 sanctions only in a narrow set of situations, where counsel's work product was patently frivolous or his motivations were improper. In *Geller, supra,* we found ourselves constrained to impose sanctions against the debtor's counsel when that attorney (subsequently suspended from the practice of law) filed a Chapter 13 case for debtors clearly over the applicable debt limit who had already been warned in a prior setting that another frivolous filing would trigger a F.R.B.P. 9011 violation. Furthermore, we found that the explanation for the filing in *Geller* was so obviously legally erroneous that counsel there could almost have been certain that the filing would constitute an improper filing. *Id.* at 568. Even so, we note that the sanction imposed on

counsel in *Geller* was in the form of a $250 fine payable to the court and was not an order to pay the movant's attorney fees, the remedy requested by the *Geller* movant as well as the Movant in the Motion before us. *Id.* at 569.

In *Smith, supra,* we held that F.R.B.P. 9011 sanctions were not appropriate because the purpose of the litigation in issue, though voluntarily abandoned on the date of the trial, was a good faith attempt to succeed on the merits and the defenses were not patently frivolous. 111 B.R. at 86. In that case, the Internal Revenue Service vigorously pursued F.R.B.P. 9011 relief because it had expended a considerable effort in preparing for a trial which the debtors precluded by voluntarily dismissing their case. Although the merits of the debtors' claims were doubtful, and the timing of the dismissal of the case was inconsiderate to opposing counsel, we nevertheless found that the conduct of counsel for the Debtor was not patently frivolous nor manifested any improper purpose. *Id.* at 86. The merits of the instant Proceeding are far more clearly visible than those advanced by counsel in *Smith.*

Since our decisions in *Geller* and *Smith,* we note that the Third Circuit Court of Appeals has addressed the F.R.B.P. 9011 issues on several occasions. However, nothing in those decisions is inconsistent with the principles of interpretation of F.R.B.P. 9011 which we set forth in *Geller* and *Smith.* In its most recent decision, as noted *supra,* the Court made it clear that a F.R.B.P. 9011 violation triggers a mandatory sanction. *Gioioso, supra,* 979 F.2d at 960. However, the *Gioioso* court did not set forth any liberalized standards for determining what constitutes a F.R.B.P. 9011 violation in the first place. Rather, the court simply found a F.R.B.P. 9011 violation as to the debtors because they knowingly and fraudulently failed to disclose information material to the case. *Id.* at 958. However, the actions of the debtors in *Gioioso* that warranted sanctions were substantially different from the conduct of Counsel in the instant case. We find no evidence that Counsel perpetrated any deceit or fraud on this court. Rather, he attempted, in good faith, to preserve or reinstate a decision favorable to his client on the merits.

The Court of Appeals also addressed F.R.B.P. 9011 in *Landon v. Hunt,* 977 F.2d 829 (3d Cir.1992). There, the court in turn affirmed a district court decision which had affirmed a prior bankruptcy court order imposing sanctions against two attorneys who were found to have filed frivolous involuntary bankruptcy petitions against the putative debtors in bad faith. *Id.* at 832. In so holding, the Court referenced the following language of the bankruptcy court:

> As a general practice and policy, this Court is very reluctant to impose punitive sanctions upon counsel and refrains from exercising the Court's authority under Bankruptcy Rule 9011. However, the conduct of counsel in this case represents the most flagrant abuse of the procedure for involuntary petitions that this Court has ever experienced. Therefore, in consideration of the complete failure of [counsel] to comply with Bankruptcy Rule 9011 and in accordance with the deterrent purposes of the rule, this Court finds and concludes that the appropriate sanction in the nature of punitive damages shall be entered against both [counsel] individually.

*Id.* at 833.

Thus, the *Landon* court based its decision on its determinations that the petitions were "filed in bad faith," *id.* at 832, and that the case represented "the most flagrant abuse of procedure that this Court has experienced." *Id.* at 833. These determinations are quite different from the determinations that we have made in the case before us. First, we did not find that the Complaint was filed in bad faith. Secondly, our finding that certain aspects of Counsel's conduct was "appalling" did not relate to his actions in filing the Proceeding, but his lapses in vigorously pursuing it. Furthermore, we have independently already sanctioned him for these lapses. In fact, here we not only stated that the Proceeding could have been successful on its merits if the statute of limitations issue could have been overcome, but also we went on to say that it may have been possible to overcome the statute of limitations issue. In these circumstances, we can in no sense find

that the filing of this Complaint constituted a bad faith filing or a flagrant abuse of procedure. Thus, we do not believe that sanctions under F.R.B.P. 9011 should be imposed upon Counsel here.

The Movant, in its post-hearing brief, argued that sanctions must be imposed against Counsel, since "th[is] Court has already determined that clear violations of Rule 9011 have occurred as a result of the filing of a complaint which was clearly time-barred" and that this court "has determined that, at a minimum, the final adversary proceeding filed by the Debtor's counsel was improper since it plainly violated the statute of limitations and was undertaken for a bad faith purpose." Memorandum of Law of R/S Financial Corporation in Support of Its Motion for Sanctions Against Debtor's Attorney, at 2, 3. These statements clearly overstate our findings in favor of the defendants in *Fricker V*. Although we did rule that the Complaint was barred by the statute of limitations, we never addressed, let alone decided, the issue of whether there was a F.R.B.P. 9011 violation due to the filing of the Complaint in the course of *Fricker V*. Thereafter, we did sanction Counsel in our May 8, 1995, Order, but that sanction was for failing to abide by our briefing schedule. Another punishment for this same conduct appears inappropriate. Moreover, this conduct and the delays before it undermined the merits of the Debtor's case rather than prejudicing the Movant's cause. It would hardly serve the ends of justice to require Counsel to bestow benefits upon it additional to the windfall already received from Counsel's improprieties which worked in the Movant's favor.

The Movant argues that, when the statute of limitations clearly bars an action, the filing of a complaint to pursue that action constitutes a F.R.B.P. 9011 violation, citing *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080 (3d Cir.1988). Although the court in *Napier* did impose sanctions for a claim brought after the statute of limitations had expired, counsel for the debtor in that case, unlike the case before us, clearly violated F.R.B.P. 9011. In *Napier*, the action subject to the F.R.B.P. 9011 motion was filed on August 25, 1986, for injuries suffered while the plaintiff had been serving in the Army *over forty years before*. Moreover, in *Napier*, the action was barred by *res judicata* in view of the fact that the plaintiff has filed *two* earlier actions which had been adversely decided against him on the merits. *Id.* at 1084. In addition to a far smaller limitations lapse than in *Napier*, we held, in *Fricker V*, that the instant Proceeding was *not* barred by *res judicata* as a result of the Debtor's earlier proceedings raising the same issue, especially since the first of these proceedings *succeeded* on its merits. 192 B.R. at 394–95. Therefore, due to the gross factual distinctions between *Napier* and the case before us, we cannot find that *Napier* is any real precedent for the principle that we should impose F.R.B.P. 9011 sanctions in this case. Also, we believe that the argument that a limitations defense is waivable, and therefore could not have been known until the defenses were raised, has some appeal. While we would not lay down a blanket rule that an obvious, though waivable, limitations defense to an action could not serve as basis for F.R.B.P. 9011 sanctions, the success of that defense was not as inevitable to us as it apparently was to the Movant.

■ Finally, we must add some words to make it clear that, even had we decided that sanctions should have been imposed upon Counsel under F.R.B.P. 9011 for the filing of this Proceeding, it did not necessarily follow that we have awarded the Movant its legal fees in this particular case as the appropriate sanction. No less authority than the Supreme Court has noted that Federal Rule of Civil Procedure 11, the model for F.R.B.P. 9011, is not a fee-shifting statute. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409, 110 S.Ct. 2447, 2462–63, 110 L.Ed.2d 359 (1990). In oral argument, the Movant cited *Waltz v. County of Lycoming*, 974 F.2d 387 (3d Cir.1992), in support of its request for reimbursement of its fees. In fact, in that case, echoing the principle that Rule 11 is *not* a fee-shifting statute, *id.* at 390, the Court of Appeals remanded a fee-shifting award for further consideration of alternative, more appropriate sanctions. *Id.* at 392. As we stated in *Geller, supra*, 96 B.R. at 569:

We believe that a B.Rule 9011(a) violation is a matter between the wrongdoers and the court. . . . [P]arties filing motions seeking to impose Rule 9011(a) sanctions should not expect, nor will we routinely consider, granting them attorney's fees as compensation as the normative appropriate sanctions, as we would do under a fee-shifting statute.

Thus, even if we were inclined to impose sanctions against Counsel under F.R.B.P. 9011, it is incorrect for the Movant to presume that the sanctions would be in the form of requiring Counsel to pay the Movant's attorneys fees. Although this remedy is obviously an available alternative, as it is referenced in the last sentence of F.R.B.P. 9011, recourse to this remedy is not automatic, and frequently is inappropriate.

*D.  CONCLUSION*

An Order consistent with the foregoing conclusions will be entered.

*ORDER*

AND NOW, this 28th day of June, 1996, after a hearing of May 7, 1996, on, *inter alia,* the Motion of R/S Financial Corporation to obtain sanctions against David M. Still, Esquire, counsel for the Debtor, and upon consideration of the parties' oral arguments and written briefs, it is hereby

ORDERED AND DECREED that the said Motion is DENIED.