**In re PENNSYLVANIA FOOTWEAR CORPORATION, Debtor.**

**PENNSYLVANIA FOOTWEAR CORPORATION, Arthur P. Liebersohn, Trustee, Plaintiffs,**

v.

**MIDLANTIC BANK, N.A., Defendant.**

Bankruptcy No. 95–19785DAS.
Adv. No. 96–0342DAS.

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 14, 1996.

---

Mark S. Karpo, Philadelphia, PA, for Debtor.

James W. Hennessey, West Conshohocken, PA, for Defendant.

Arthur Liebersohn, Philadelphia, PA, Trustee–Plaintiff.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Bankruptcy Judge.

### A. INTRODUCTION

Presently before this court is a motion for summary judgment ("the Motion") of MID-LANTIC BANK, N.A. ("the Movant") in its favor as to the Complaint for Money ("the Complaint") brought against the Movant in the above-captioned adversary proceeding ("the Proceeding") in which PENNSYLVANIA FOOTWEAR CORPORATION ("the Debtor") and "ARTHUR P. LIEBERSOHN, As Chapter 7 Bankruptcy Trustee" ("the Trustee"), are the Plaintiffs.

The Complaint alleges the Movant's failure to have certain real estate owned by the Debtor removed from a February 21, 1992, sheriff's sale list, per a forbearance agreement between the parties. The Complaint demands, as damages, uncollected rents and compensation for a steep reduction in the market value of the real estate arising from the Movant's alleged breach of the forbearance contract.

The Motion is based on the contention that the Complaint, not having been filed until March 12, 1996, is time-barred under even the longest possibly applicable statute of limitations. Finding that the applicable statute of limitations is four years; that the Plaintiffs have properly alleged (if not proven) March 4, 1992, as the date of discovery of the Debtor's cause of action; and that a recitation of the claims set forth in the Complaint in a summarily-dismissed counterclaim to the Movant's unsuccessful motion to dismiss this case filed on March 4, 1992, appears to constitute a "proceeding . . . timely commenced" within the pertinent Pennsylvania "savings statute," 42 Pa.C.S. § 5535(a)(1), the Motion is denied.

### B. FACTUAL AND PROCEDURAL HISTORY

On December 14, 1995, the Debtor filed the underlying voluntary Chapter 7 bankruptcy case *pro se,* by Joel Karpo ("Joel"), its President and only officer. On January 17, 1996, the Movant filed a motion not only to dismiss this case, but also to preclude the Debtor from re-filing another similar bankruptcy case within the next 180 days. In support of the 180-day filing bar, the Movant alleged that the Debtor, per Joel, had filed previous cases on June 17, 1994; January 1, 1995; and June 15, 1995, all of which, like the instant case, had stayed a sheriff's sale of the Debtor's Maple Plaza Shopping Center, located at 4233 Edgmont Avenue, Brookhaven, Pennsylvania 19015 ("the Property"), scheduled by the Movant in execution on its foreclosure judgment, and all had been dismissed when the Debtor failed to file the Schedules. A hearing was scheduled on the motion to dismiss ("the MTD") on February 13, 1996. Possibly the imposing nature of the MTD spurred Joel to engage Mark S. Karpo, Es-

quire ("Mark"), apparently a relative, as the Debtor's counsel for the first time.

The parties agreed to a continuance of the February 13 hearing until March 5, 1996. Then, on March 4, 1996, the Debtor, per Mark, filed all necessary Schedules and an answer to the MTD with a counterclaim ("the CC;" the entire pleading is referenced as "the Answer & CC"). The Answer & CC properly addressed all the averments to the MTD and further, in the CC portion, alleged basically the same facts and requested the same relief as is alleged and requested in the Complaint, as described at pages 538–40 *infra.*

■ On March 12, 1996, the Debtor, per Mark as in all of its subsequent pleadings, filed the instant Proceeding, naming the Trustee as a co-plaintiff with the Debtor. The trial was scheduled on April 30, 1996. On April 11, 1996, the Movant filed an answer to the Complaint ("the Answer") and a demand for a jury trial. The Answer admitted an averment that the Proceeding is core, which in our view constitutes express consent for us to determine it. *See In re St. Mary Hospital,* 117 B.R. 125, 131 (Bankr.E.D.Pa. 1990). The trial was mutually continued until June 25, 1996.

The next developments were spurred by a colloquy with interested counsel at a hearing of June 13, 1996, to show cause why the case should not be dismissed because the Debtor failed to appear at the meeting of creditors on February 7, 1996. In light of Joel's condition as a double amputee of both of his legs due to a severe diabetic condition, the Debtor was permitted, in an order of that date, to answer written interrogatories in lieu of appearance by Joel at the meeting of creditors. However, we also noted that, on June 12, 1996, the Movant had filed the Motion before us. We therefore entered an Order of June 14, 1996, allowing the Debtor until July 5, 1996, to answer the Motion, and, when both parties consented to our conducting the duly-requested jury trial of the Proceeding, *see* 28 U.S.C. § 157(e), we set back the potential

jury trial until July 25, 1996. We also entered, with the parties' concurrence, an order appointing Bruce E. Hartman, Esquire, as a mediator ("the Mediator"), pursuant to our court-authorized mediation program, to attempt to avoid the cost and necessary efforts potentially needed to conduct a jury trial.

Briefs were timely filed. On July 15, 1996, we entered an order allowing the Mediator to go forward when both parties waived a potential conflict; permitting the Movant to file a reply brief by July 19, 1996;[1] requesting the Movant to reconsider its jury demand; and re-establishing the July 25, 1996, trial date as a date for a conference.

As a result of that conference, upon withdrawal of the Movant's jury demand, we allowed the Debtor until August 1, 1996, to file a counter-reply brief; scheduled a status hearing to receive a further report from the Mediator on August 22, 1996; and, in the event of his lack of success in reaching a resolution, scheduled the trial before this court on a must-be-tried basis on September 12, 1996. We have decided that issuing this Opinion denying the Motion may assist the parties and the Mediator in reaching an amicable resolution of the Proceeding.

The facts surrounding the Complaint began on May 29, 1981, when Lincoln Bank, the predecessor to Continental Bank, which is in turn the predecessor of the Movant, loaned the Debtor $200,000, evidenced by, *inter alia,* a mortgage ("the Mortgage") against the Property. Apparently payments under the obligation were made until October 1990, when the Debtor defaulted. The Movant then initiated a foreclosure proceeding against the Property, and it was listed for a sheriff's sale on April 19, 1991.

On April 18, 1991, the parties entered into a written Forbearance Agreement ("the 1st Forbearance"), executed on May 8, 1991. Pursuant to the terms of the 1st Forbearance, the Debtor made a lump-sum payment to the Movant of $38,000 in consideration for which the Movant agreed to stay the sheriff's

---

1. We were unaware at that time that the Movants had officiously and improperly filed an unsolicited reply brief on that day, July 15, 1996. *See In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr. E.D.Pa.1987), *aff'd sub nom. Jungkurth v. Eastern Financial Services, Inc.,* 87 B.R. 333 (E.D.Pa. 1988).

sale of the Property for a period of four months to allow the principals of the Debtor to actively market the sale of the Property. However, the 1st Forbearance further provided that, if the sale of the Property did not take place at the conclusion of the four-month period, the Property would be relisted for a sheriff's sale or the Debtor would be required to pay all outstanding principal and interest on the debt to the Movant.

During this four-month period, any and all rents due and payable to the Debtor from its (apparently four) tenants leasing space at the Property were to be assigned to the Movant by Joel to be applied against the Mortgage. An assignment of rents to the Movant was also provided by the Debtor under the terms of the 1st Forbearance, and shortly thereafter the tenants were notified of the assignment in writing by both parties.

The Debtor failed to sell the Property and did not make the required payment to the Movant within the four-month period. Therefore, in October 1991, the Movant proceeded with foreclosure and the Property was relisted for a sheriff's sale on December 20, 1991. The exact details of the events thereafter are stated less than clearly by the parties and appear to be disputed in several respects.

The parties agree that in December, prior to the December 20, 1991, sheriff's sale, by *some* type of agreement, the Property was taken off the sheriff's sale list. It appears that, during December, there were discussions between Anthony D. Reagoso, Esquire ("Reagoso"), and Joseph Higgins, Esquire ("Higgins"), on behalf of the Movant and the Debtor, respectively, regarding the postponement of the December 20, 1991, sheriff's sale. There was also a conversation between Reagoso and Joel which appears to have occurred on December 19, 1991. All of these discussions ultimately resulted in an agreement ("the 2nd Forbearance") whereby the Movant promised that the Property would be taken off the sheriff's sale list in exchange for the Debtor's promise to pay the Movant the proceeds from the anticipated sale ("the Transaction") of two other properties which the Debtor owned, located at 13 East Maple

Avenue and 15 East Maple Avenue, Brookhaven, Pennsylvania ("the Other Properties").

These discussions resulted in a number of writings, none of which individually make the details of the 2nd Forbearance perfectly clear, but which collectively enable us to understand the basic features of that agreement. First, there is a letter dated December 10, 1991, from Reagoso to Higgins, stating that the Movant should provide a more definite projected date of when the Transaction would close. As evidenced by a responsive letter from Higgins to Reagoso dated December 11, 1991, the Transaction was supposed to take place on or before January 31, 1992. Next, there is a letter dated December 16, 1991, from Reagoso to the Delaware County Sheriff's Office requesting that the Property be taken off the December 20, 1991, list, and re-listed for the February 1992 sheriff's sale list. Finally, there is a letter dated February 4, 1992, from Reagoso to Higgins referring to the conversation that Reagoso had with Joel on December 19, 1991, which resulted in the 2nd Forbearance.

However, there is some dispute as to when the Property was to be re-listed for a sheriff's sale in the event that the Debtor did not comply with the terms of the 2nd Forbearance. The Debtor contends that the Movant agreed not to relist the Property for at least six months, and that the Movant did not inform the Debtor that the Property was re-listed on the February 1992 sheriff's sale list. Joel, in an Affidavit responsive to the Motion, states that "at no time prior to March 4, 1992, did I have any knowledge or reason to believe that the [Property] was either listed for, or sold at, sheriff sale on February 21, 1992." The Movant, on the other hand, contends that the December sheriff's sale was originally postponed by agreement of counsel until February 21, 1992, so that the Debtor could complete the Transaction.

Nevertheless, in a February 4, 1992, letter from Reagoso to Higgins, which the Debtor contends represents the writing containing all of the details of the 2nd Forbearance, there is no mention of the February 21, 1992, sheriff's sale. The letter states that "[i]f the shopping center is not sold within six months of the date of the [T]ransaction, and/or [the

Debtor] does not come up with the required amount of cash, the [P]roperty will be sheriff's sold." Further, at the deposition of Reagoso, among an abundance of "I can't recall" answers, Reagoso stated that he did not recall having a conversation with Joel in December 1991, let alone informing Joel that the sheriff's sale was postponed until February 1992.

In any event, on February 14, 1992, Reagoso spoke with Higgins regarding the Transaction pertaining to the Other Real Estate, and Higgins represented that the Transaction would now close by June 1992 at the latest. The Debtor contends that, during this conversation, there was no mention of the February 21, 1992, sheriff sale. The Movant, on the other hand, contends that, on February 14, 1992, Reagoso agreed only to postpone the February 21, 1992, sheriff's sale to allow the Debtor additional time to sell the Other Properties. The Movant alleges that this agreement is separate and distinct from the 1st Forbearance.

Although there is uncertainty over the terms of the 2nd Forbearance, the Movant does admit that, through its inadvertence, the Property was erroneously never taken off the February 21, 1992, sheriff's sale list, and, unbeknownst to the Movant, the Property was sold to a third party for $1,000. The Movant also admits that it first learned that the Property was sold at the February 21, 1992, sheriff's sale on March 4, 1992, when Reagoso received a phone call from a third party notifying him of the sale. On that same day, upon learning this information, Reagoso notified Joel of the sale by telephone. The Debtor contends that the March 4, 1992, telephone call from Reagoso was the first notice which the Debtor received that the Property had been sold and that the Property had even been listed on the February 21, 1992, sheriff's sale list.

On March 5, 1992, the Movant filed a Petition to Set Aside the Execution Sale of the Property ("the Petition") in the state court, the Court of Common Pleas of Delaware County ("the CCP"). The Petition was opposed by the third-party sheriff's sale purchaser, and an ongoing dispute ensued until July 13, 1993, when the CCP granted the Petition.

The Complaint sets forth a breach of contract claim against the Movant arising out of these events. The Debtor alleges that the Movant's failure to cause the Property to be taken off the February 21, 1992, sheriff's sale list was a direct breach of the 2nd Forbearance contract with the Debtor. The Debtor further alleges that, in March 1992, due to the dispute over the Property's ownership, the Movant directed tenants of the Property to cease submitting rent payments assigned to the Movant, and to hold onto their rent payments. The result of this directive was that allegedly no further rent payments were collected by the Movant or applied against the Debtor's Mortgage. Also, it is alleged that, due to the cloud on the Property's title, the Debtor was unable to further market the Property; and that, due to the ownership dispute, no repairs or maintenance were made to the Property, and it fell into a dilapidated condition as a result of roof leaks of which the Movant was aware.

Since the Movant's alleged contractual breach caused the ownership dispute, the Complaint avers that the Movant had a duty to maintain the Property in the same condition as it was in prior to the Movant's breach. The Debtor therefore seeks damages of $160,000 for the decline in the Property's market value and $195,200 on account of uncollected rents from the Property, plus costs, expenses and reasonable attorney fees.

### C. DISCUSSION

#### 1. The Standards for Ruling on a Motion for Summary Judgment

Federal Rule of Civil Procedure ("F.R.Civ.P.") 56(c), which applies in adversary proceedings, pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7056, provides in pertinent part that a summary judgment

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We recently issued a Report and Recommendations ("the Report") supporting a partial grant of a motion for summary judgment in a non-core proceeding, which was ultimately approved and adopted by the district court, in *In re Joshua Hill, Inc.*, 199 B.R. 298 (E.D.Pa.1996). Therein, we discussed at length the standards for summary judgment, with special emphasis on limitations issues which were raised in that matter. There, we described the applicable standards as follows, at 308–09:

> The general standards for ruling on a motion for summary judgment, from two different perspectives, were presented by us in two decisions arising from the same case, reported as *In re Rosco Investors, L.P.*, 1996 WL 107503 (Bankr.E.D.Pa. March 6, 1996) (motion for partial summary judgment denied) *("Rosco II")* and *In re Rosco Investors, L.P.*, 1995 WL 728605 (Bankr.E.D.Pa. Dec. 5, 1995) (motion for partial summary judgment granted in large part) *("Rosco I")*. In *Rosco I*, we noted that:
>
> > "[t]he Supreme court has recently issued several decisions interpreting F.R.Civ.P. 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). These cases convey the distinct, if not explicit, message that summary judgment is not "a disfavored procedural shortcut." '. M. Nelkon, One Step Forward Two Steps Back: Summary Judgment After Celotex, 40 HASTINGS L.REV. 53, 53 (1988) (quoting *Celotex, supra*, 477 U.S. at 327, 106 S.Ct. at 2555). In particularly *Celotex*, the Court emphasizes the consequences of the failure of the party opposing a summary judgment motion to recognize that he 'may not stand on the allegations of his pleadings.' 6 J. MOORE, FEDERAL PRACTICE, ¶ 56.22[2], at 56–767 (2d ed. 1988). Thus, the Court states, in *Celotex*, that 'the plain language of Rule 56(a) mandates the entry of summary judgment after adequate time for discovery and upon motion,' against a party

who fails to make a showing sufficient to establish 'that there is a genuine issue as to any material fact which is an element essential to that party's case.' 477 U.S. at 32 [106 S.Ct. at 2385–86]."

However, in *Rosco II*, quoting *In re Price*, 1994 WL 142373, at *3–*4 (Bankr.E.D.Pa. April 12, 1994), we cautioned that

> " '[i]n ruling on a motion for summary judgment, our function is not to weigh the evidence, ... but rather to determine whether there is any genuine issue as to any material fact. *See Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169 (E.D.Pa.1990). The evidence of the nonmoving party is to be assumed correct, and all reasonable inferences therefrom are accrued to the benefit of the nonmoving party. *Berner Int'l Corp. v. Mars Sales Co.*, 987 F.2d 975, 978 (3d Cir.1993); and *In re Asbestos School Litigation*, 768 F.Supp. 146, 149 (E.D.Pa.1991). Summary judgment is to be entered only if, in spite of the foregoing, the court deems that the movant is entitled to relief as a matter of law. . . .
>
> " 'While the Supreme court has recently stated that summary judgment is not to be regarded as 'a disfavored procedural shortcut,' *Celotex Corp. v. Catrett*, 477 U.S. 317, [327] 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), courts have consistently been cautious in granting summary judgment. Earlier, the Supreme Court stated that "Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." *Associated Press v. United States*, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1944). More recent decisions of the Court of Appeals have characterized summary judgment as ' " 'a drastic remedy,' " ' *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981), quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1982), in turn quoting *Tomalewski v. State Farm Insurance Co.*, 494 F.2d 882, 884 (3d Cir.1974)). This court has also similarly characterized the summary

judgment procedure. *See In re Leedy Mortgage Co.*, 76 B.R. 440, 445 (Bankr. E.D.Pa.1987); *In re American International Airways, Inc.*, 74 B.R. 691, 696 (Bankr.E.D.Pa.1987); and *In re H & H Beverage Distributors, Inc.*, 65 B.R. 243, 244 (Bankr.E.D.Pa.1986).'"

We conclude from the foregoing that the necessity to resolve any genuine issue of material fact in order to resolve an issue precludes the entry of summary judgment on that issue. However, we must further note that, in determining whether there is any genuine issue as to any material fact, an issue is considered "genuine" only if there is sufficient evidence for a jury to find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202] (1986). A dispute is "material" if it might affect the outcome of the action under the governing law. *Id.* at 248 [106 S.Ct. at 2510]. The non-moving party must set forth "specific facts showing that there is a genuine issue for trial," *id.* at 256 [106 S.Ct. at 2514], in response to the movant's assertions. We note that, while *Moore* states that "summary judgment may be particularly appropriate as to statute of limitations issues," 6 J. MOORE, FEDERAL PRACTICE, ¶ 56.17[58], at 56–606 (2d ed. 1995–96), the text further cautions that, "when ... a genuine issue of material fact remains, especially as to the time the action accrued, a motion for summary judgment on the basis of the statute of limitations should be denied." *Id.* at 56–609 to 56–610.

2. *The Debtor Could Quite Conceivably Establish that the Complaint Is Not Time–Barred, and Therefore the Motion for Summary Judgment Must Be Denied.*

Applying the foregoing principles to the Movant's contention that summary judgment should be granted because the Debtor's Complaint is time-barred, we must focus on the general question of whether there exists an issue of material fact which must be resolved before we can determine whether the statute of limitations expired before the filing of the Complaint. If we determine that an issue of material fact exists which is relevant to this issue, then we must also determine (1) if the Complaint is time-barred as a matter of law by deciding which limitations statute applies; and (2) if the Complaint was tolled by the applicable state law "savings statute."

In this sequence of issues, the Debtor must first provide sufficient evidence for a jury to find that the statute of limitations period began to run on the Complaint no sooner than March 4, 1992, under the discovery rule. However, survival of the claims in the face of the statute of limitations would also mandate our finding the following: (1) that the four-year statute of limitations, pursuant to 42 Pa.C.S. § 5525(8), is the applicable limitations period; (2) that the statute of limitations was tolled by the Pennsylvania savings statute, 42 Pa.C.S. § 5535(a), when the Debtor filed its Answer & CC with this court on March 4, 1996; and (3) that the statute of limitations did not expire prior to March 4, 1996, the date of the filing of the Answer & CC.

a. *The Debtor Has Provided Sufficient Evidence to Permit Us to Conclude that the Statute Began to Run on March 4, 1992.*

In our *Joshua Hill* Report, *supra*, at 310, we explained that the limitations period begins to run on a claim concerning which the "discovery rule" applies as follows:

The statute of limitations begins to run "when the cause of action arises, as determined by the occurrence of the final significant event necessary to make a claim suable." *Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co.*, 372 F.2d 18, 20 (3d Cir.1966), *cert. denied*, 387 U.S. 930 [87 S.Ct. 2053, 18 L.Ed.2d 992] (1967). However, in order to maintain an action, a plaintiff must reasonably be expected to know of the existence of that action. The so-called "discovery rule" provides that the statute begins to run as soon as the plaintiff has discovered or, in exercising reasonable diligence, should have discovered, the injury in question and its cause.... Thus, if, through an affirmative act of fraud or concealment, a defendant causes a plaintiff to relax his vigilance or to deviate from his right of injury,

then the statute will be tolled until the plaintiff knows, or through reasonable diligence should know, of the claim....

The Third Circuit Court of Appeals, in discussing the discovery rule, has recently stated that "[t]he discovery rule tolls the running of a statute of limitations until 'the plaintiff knows, or reasonable should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *In re TMI*, 89 F.3d 1106, 1116 (3d Cir.1996), quoting *Cathcart v. Keene Industrial Insulation*, 324 Pa.Super. 123, 136, 471 A.2d 493, 500 (1984) (en banc).

In applying the foregoing principles to the facts presented, we easily conclude that the discovery rule applies. The parties do not dispute that there was an agreement not to sell the Property at a sheriff's sale until some time after June 1992, even though the date and details of same are disputed. The Movant further admitted that, through its inadvertence, the Property was sold at the February 21, 1992, sheriff's sale, thus conceding its breach of that agreement. The sheriff's sale of the Property on February 21, 1992, under the facts alleged by the Debtor, would constitute an injury to the Debtor caused by the Movant's failure to have the Property taken off the sheriff's sale list. Thus, February 21, 1992, is the date of the event that begins the running of the statute of limitations.

However, the Debtor contends that it did not become aware of the injury in question, *i.e.*, the sale of the Property, until March 4, 1992, when Reagoso telephoned Joel with such information. The Debtor further contends that it was not even aware that the Property had been listed for a sheriff's sale on February 21, 1992. The Movant further alleges that it made the Debtor aware that the Property was listed for a sheriff's sale on February 21, 1992, either in December 1991, in the conversation between Reagoso and Joel, or on February 14, 1992, in a conversation between Reagoso and Higgins. Finally, the Movant also contends that the Debtor was bound to know of the February listing as a matter of law, because it was part of a court record, citing *Mengel v. New Tripoli Nat'l Bank*, 156 Pa.Super. 434, 438, 40 A.2d

859, 862 (1945). Thus, it argues, the discovery rule cannot apply because the Debtor did not use reasonable diligence by taking account of court records indicating that the Property remained on the February 21, 1992, sheriff's sale list.

We reject the Movant's contentions for several reasons. First, we believe that the Movant reads the relevant *Mengel* language far too broadly. In that case, a junior creditor of the debtor complained because a property was sold in execution of a senior creditor's claim without his having received any notice of the sale. However, that creditor was aware that the sale had been stayed in the prior month without immediately obtaining a new date. 156 Pa.Super. at 435–36, 40 A.2d at 861. The creditor therefore clearly had an expectation that the sale would be rescheduled, and the court simply held that it was the creditor's responsibility to ascertain the precise new sale date.

By way of contrast, the Debtor has presented evidence that it reasonably believed that the Property would not be listed prior to June 1992, which is at worst a dispute as to a material fact. Further, assuming *arguendo* that the Debtor was aware of a possible sale prior to June 1992 at some point, the Movant admits that, on February 14, 1992, in a conversation with Higgins, Reagoso agreed to have the Property removed from that list. Although the details of this conversation are disputed, it appears that the Debtor could quite easily establish that it reasonably relied on this information, especially based on the prior dealings between the parties on this subject. Thus, not verifying that the Property was taken off the list does not preclude the use of the discovery rule. Since the Movant itself was apparently surprised that the Property was sold on February 21, 1992, and admittedly did not learn otherwise until March 4, 1992, it can hardly be deemed unlikely for the Debtor to establish that it was similarly unaware of the sheriff's sale until advised of same by Reagoso on March 4, 1992. We therefore find that the Debtor may well be able to establish that the statute did not begin to run until March 4, 1992.

b. *The Four–Year Limitations Period Pursuant to 42 Pa.C.S. § 5525 Is the Applicable Limitations Statute.*

■ As part of our original *Joshua Hill* Report, *supra,* and especially in the Memorandum in support of denial of a motion for reconsideration ("the Memorandum"), at 310–11, 312, 315–16, 316–17, 324–28, we did an extensive analysis of several of the Pennsylvania statutes of limitations. Relevant to the case before us is the discussion on the four-year statute, pursuant to 42 Pa.C.S. § 5525, which provides as follows:

§ 5525. Four year limitation

The following actions and proceedings must be commenced within four years:

(1) An action upon a contract, under seal or otherwise, for the sale, construction or furnishing of tangible personal property or fixtures.

. . . . .

(8) An action upon a contract, obligation or liability founded upon a writing not specified in paragraph (7) [relating to actions on bonds], under seal or otherwise, except an action subject to another limitation specified in this subchapter.

In the Report and Memorandum, *id.* at 308–10, 326–28, we concluded that contractual claims, though relative to real estate transactions, are generally subject to the four-year limitation period found in § 5525(8), even in the face of the plaintiffs' vigorous contention, in *Joshua Hill,* that the five-year period set forth in 42 Pa.C.S. § 5526(2) applied because that statute makes reference to actions regarding specific performance of contracts relevant to real estate.

The claims set forth in the instant Complaint are based solely upon an alleged breach of a contract by the Movant, as the result of which the sale of the Debtor's Property occurred. Specifically, the Debtor contends that the breached contract is the 2nd Forbearance, the details of which are contained in the February 4, 1992, letter from Reagoso to Higgins. Although this letter does not clarify the details of the agreement to the same degree as the duly-signed 1st Forbearance, the letter does clearly represent that the Movant would not re-list the

Property for a sheriff's sale for six months. We believe that this signed letter could satisfy the "writing" requirement in § 5525(8), and could overcome any statute of frauds defense which the Movant might assert.

The Movant, on the other hand, contends that the applicable statute of limitations is 42 Pa.C.S. § 5524, which limits the time for bringing an action "for waste or trespass of real property" and for any action based on negligence or other tortuous conduct to two years, citing principally *In re Shields,* 148 B.R. 783, 786–87 (Bankr.E.D.Pa.1993); and *Bednar v. Marino,* 435 Pa.Super. 417, 425–26, 646 A.2d 573, 577–78 (1994).

*Shields* was an action to set aside a sheriff's sale, but it was brought on the basis that the sale constituted a fraudulent conveyance. 148 B.R. at 786–87. No claims sounding in contact were asserted. Similarly, *Bednar* involved the wrongful sale of the plaintiff's personal property. However, that action was instituted by a tenant against a landlord and involved a pure conversion claim. *Id.,* 435 Pa.Super. at 425, 646 A.2d at 578. The specific statute of limitation referenced by the *Bednar* court, as the Debtor points out, was 42 Pa.C.S. § 5524(3), which relates to "[a]n action for taking, detaining or injuring *personal* property" (emphasis added). The instant Proceeding involves real estate. By way of contrast, no claim referencing any contract between the parties, as is in issue here and triggers § 5525(8), was asserted by the *Bednar* plaintiff.

The instant action, sounding in contract, is therefore clearly within the broad scope of § 5525(8). This is not an action asserting "waste," which has been defined as "spoil or destruction committed in houses or other corporal hereditaments," *McCullough v. Irvine's Executors,* 13 Pa. 438, 440 (1850), committed by a party in rightful possession of the premises affected. 78 AM.JUR.2d 395, 397 (1975). The instant claims of the Debtor arise from an alleged breach of the parties' contract in letting the February 21, 1992, sheriff's sale take place. No "spoil or destruction" of the Property at the direct hand of the Movant is alleged, nor is there any contention that the Movant was rightfully or

otherwise in possession of the Property at the time of the alleged injury to the Debtor.

The Movant also contends that the only agreement between the parties regarding its forbearance from the February 21, 1992, sale occurred in the February 14, 1992, telephone conversation between Reagoso and Higgins, and therefore there is no writing on which to base the parties' alleged contract. Without purporting to finally decide the issue of whether any such contract is enforceable, we conclude that the Debtor has provided sufficient evidence to support its contention that the February 4, 1992, letter from Reagoso to Higgins represents a requisite written memorialization of the 2nd Forbearance to preclude summary judgment against it on this basis. Furthermore, after sorting through the many different allegations presented by each of the parties, we easily conclude that there are genuine issues of material fact as to what constituted the contract in issue which are unresolved to render a disposition on the basis of F.R.B.P. 7056 inappropriate here.

c. *A March 4, 1996, Filing Was Timely If the Statute of Limitations Did Not Begin to Run Until March 4, 1992.*

 The Debtor filed with this court and served on Movant the Answer & CC described at pages 537–38 *supra*, on March 4, 1996, which is of course exactly four years after March 4, 1992. The Movant has not addressed the issue of whether a March 4, 1996, filing would be timely if we were to find that the applicable limitations period began to run on March 4, 1992, since it argues that limitations began to accrue as of February 21, 1992, and that no filing sufficient to toll the statute was filed until March 12, 1996. Our conclusions that the March 4 dates may both be appropriate prompts us to address that issue here.

The Third Circuit Court of Appeals, in a case in which it borrowed the applicable Pennsylvania state law statute of limitations, has concluded that the statute of limitations expires on the anniversary date of the event in issue. *Monkelis v. Mobay Chemical,* 827 F.2d 937, 938 (3d Cir.1987). In *Monkelis* the measuring date to begin the running of the statute of limitations was April 11, 1980, the last day of the plaintiff's employment. The court concluded that, assuming a six-year state limitation period applied, the statute of limitations did not expire until April 11, 1986. *Id.*

The *Monkelis* court stated that, "[i]n determining the final date of the limitations period, we follow the method of calculation used in [F.R.Civ.P.] 6(a) at least in non-diversity cases." *Id.* Rule 6(a) provides, in pertinent part, that,

[i]n computing any period of time prescribed or allowed by these rules, by the local rules of any direct court, by order of court, or by any district court, by order of court, or by any applicable statute, *the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included,* ... (emphasis added).

Rule 6(a) is incorporated in its entirety into the federal bankruptcy proceedings by the terms of F.R.B.P. 9006(a).

Another case dealing with the computation of the last day on which to file a timely claim, and one that deals specifically with a Pennsylvania statute of limitations, is *Perrine v. Heishman,* 253 F.Supp. 68 (M.D.Pa.1966). In *Perrine* the plaintiff filed a complaint claiming damages for injuries suffered in a Pennsylvania accident that occurred on February 28, 1964. The court, in applying a two-year Pennsylvania statute of limitations, concluded that the last day for the plaintiff to have brought this action was February 28, 1966. *Id.* at 69. In making this determination, the court stated that "[i]n computing the time in which the action must be brought, in Pennsylvania, the day on which the cause of action arose is omitted and the last day of the period is included," citing *Tellip v. Home Life Ins. Co.,* 152 Pa.Super. 147, 150, 31 A.2d 364, 365 (1943).

Since we are applying Pennsylvania state-law limitations, we also look to Pennsylvania state court cases interpreting Pennsylvania statutes of limitations to determine how to compute time under Pennsylvania law. In *Williams v. Medical College of Pennsylvania,* 381 Pa.Super. 418, 424–27, 554 A.2d 72,

74–76 (1989), the court, in applying the two-year limitations period of 42 Pa.C.S. § 5524(2), held that the two-year period expired on August 29, 1986, for an injury that occurred on August 29, 1984. *Id.* In reaching this conclusion, the court relied upon 1 Pa.C.S. § 1908, which provides, in pertinent part, as follows:

> Computation of Time. When any period of time is referred to in any statute, such period in all cases, ... shall be computed so as to exclude the first and include the last day of such period ...

Therefore, pertinent Pennsylvania law, as embodied in 1 Pa.C.S. § 1908, is consistent with F.R.B.P. 9006(a), incorporating F.R.Civ.P. 6(a). Consequently, if the Debtor can establish that limitations did not begin to run until March 4, 1992, and if the filing of the Answer & CC on March 4, 1996, tolls the running of the statute, limitations would not bar the Proceeding.

d. *The Pennsylvania Savings Statute, 42 Pa.C.S. § 5535, Applies Under These Circumstances.*

Perhaps the most difficult issue raised by the Motion is whether the Pennsylvania savings statute, 42 Pa.C.S. § 5535(a), which provides as follows, applies under these circumstances:

(a) Termination of prior matter.

(1) If a civil action or proceeding is timely commenced and is terminated, a party, or his successor in interest, may, not withstanding any other provision of this subchapter, commence a new action or proceeding upon the same cause of action within one year after the termination and any other party may interpose any defense or claim which might have been interposed in the original action or proceeding.

(2) Paragraph (1) does not apply to:

(i) An action to recover damages for injury to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

(ii) An action or proceeding terminated by a voluntary nonsuit, a discontinuance, a dismissal for neglect to prosecute the action or proceeding, or a final judgment on the merits.

The pertinent language of the statute on which we must focus our attention is "[i]f a civil action or proceeding is timely commenced." We must then decide whether the Answer & CC filed by the Debtor on March 4, 1996, in this court was a "civil action or proceeding" within the meaning of § 5535(a). We have found very little case law within our jurisdiction interpreting the scope of § 5535(a)(1), and we have only found one case, introduced to us by the Debtor in its counter-reply brief, factually similar to the case before us.

The Third Circuit Court of Appeals has explained the purpose of § 5535(a) as a statute that "reflects a legislative determination of the Commonwealth's policy regarding limitations when a suit is dismissed. It provides that in most instances where the dismissal is for a reason unrelated to the merits, limitations will not bar a new suit instituted by the plaintiff within a year." *Stinson v. Kaiser Gypsum Co.*, 972 F.2d 59, 63 (3d Cir.1992). We interpret this pronouncement to mean that § 5535 should be read broadly. However, the *Stinson* court does not provide us with any guidance as to what constitutes a "civil action or proceeding" or as to how broadly the "civil action or proceeding" language should be read.

The factually-similar case, *Johnstone v. Hershowitz*, 1990 WL 161098 (E.D.Pa. October 18, 1990), is a short decision adopting an unpublished United States Magistrate's Report and Recommendation applying § 5535 to an improperly-filed motion. The *pro se* plaintiff in that case filed a "Motion for Recovery of Property" against the United States within the two-year Pennsylvania statute of limitations, 42 Pa.C.S. § 5524. The motion was denied without prejudice "for the reason that the avenue to relief pursued by the plaintiff—a motion filed within the framework, and under the docket number, of his criminal case—was not the proper route." *Id.* at *1. The plaintiff subsequently filed a proper complaint, essentially repeating the allegations of the "Motion for Return of Property." *Id.* The Magistrate found, and the district court adopted that finding, that

the "Motion for Return of Property" was a "civil action" within the meaning of § 5535(a). *Id.* However, the discussion of the application of § 5535 in this decision is limited to less than one full sentence and the ultimate conclusion is based on the Magistrate's unpublished analysis. It is therefore only the ultimate conclusion, and not helpful reasoning, which we can draw from this decision.

Although we could not find any relevant legislative history interpreting the scope of § 5535, we did note an Official Source Note to § 5535 stating, "Subsection (a) ... [is] patterned after New York Civil Practice Law and Rules § 205" ("the N.Y. Law"). By citing to the N.Y. Law, the Pennsylvania legislature apparently intended that the Pennsylvania savings statute be interpreted similarly to the N.Y. Law.

The N.Y. Law begins with the language "[i]f an action is timely commenced ..." There is a substantial body of New York case law interpreting the purpose and scope of the N.Y. Law, and we will review same as guidance in interpreting the scope of § 5535.

All of the cases interpreting the N.Y. Law make it clear that the statute should not be narrowly construed. The Second Circuit Court of Appeals has on several occasions interpreted the N.Y. Law to be a very liberal statute. Thus, in *Graziano v. Pennell,* 371 F.2d 761, 763 (2d Cir.1967), the court stated that

> [t]he obvious purpose of CPLR § 205(a) and its counterparts in many other states is to prevent the general statute of limitations from barring recovery because a court has ordered a timely action to be terminated for some technical defect that can be remedied in a new one.

Also, we note that *Graziano* quotes, at *id.,* the following characterization of the N.Y. Law by then-Judge Cardozo in *Gaines v. City of New York,* 215 N.Y. 533, 539, 109 N.E. 594, 596 (1915):

> The statute is designed to insure the diligent suitor the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts.

*See also Producers Releasing Corp. De Cuba v. Pathe Industries, Inc.,* 184 F.2d 1021, 1023 (2d Cir.1950), also quoting *Gaines, supra.*

The Pennsylvania savings statute was enacted in 1976, subsequent to the *Graziano* and *Producers Releasing Corp.* cases, which make it clear that the N.Y. Law is to be construed liberally and broadly. It seems likely, from this history, that the Pennsylvania legislature intended that § 5535(a) should likewise be read liberally and broadly.

The case law interpreting the N.Y. Law focuses on the notice to the adverse party of the plaintiff's cause of action within the limitations period. *See Graziano, supra,* 371 F.2d at 763; and *Producers Releasing Corp., supra,* 184 F.2d at 1021. Further in *Harris v. United States Liability Ins. Co.,* 746 F.2d 152, 154 (2d Cir.1984), the court stated:

> In applying the statute, New York courts are properly concerned, not with the "technicalities of the form of relief originally requested," but with whether the defending party was fairly notified of the subject of the dispute within the limitations period.

■ We do not read these cases as holding that *any* type of notice to the adverse party of the cause of action within the limitations period will enable a party to invoke § 5535(a). Otherwise, a letter or a telephone conversation could be held to stop the running of a statute of limitations, which we do not believe should be the case. Instead, the proper reference is to a pleading filed in the court of appropriate jurisdiction over the claim. *Cf. In re Wilbert Winks Farm, Inc.,* 114 B.R. 95, 97 (Bankr.E.D.Pa.1990) (only a document filed in the bankruptcy court will constitute an "informal proof of claim" sufficient to preclude the running of an applicable bar date for filing claims). However, we note that we consider the type of notice provided by the document purporting to "save" the plaintiff from a limitations period is a factor to be considered in determining whether § 5535(a) can be invoked.

In the case before us, the Movant and this court were properly served with the Debtor's Answer & CC on March 4, 1996. In the CC, the Answer & CC alleged quite clearly the facts of the cause of action set forth in the Complaint, which constituted sufficient notice to the Movant of the Debtor's claims in this Proceeding.

■ However, sufficient notice alone will not be enough to enable a party to invoke § 5535(a). There must be a "civil action or proceeding" which provides the notice. The Debtor utilizes the heading of a "counterclaim" in that portion of the Answer & CC in which it states its claims against the Movant. In interpreting the phrase "an action is timely commenced" under the N.Y. Law, New York courts have frequently found that counterclaims are within the scope of this language. *See Gross v. Newburger, Loeb & Co., Inc.*, 103 Misc.2d 417, 426 N.Y.S.2d 667, 672–73 (Nassau Co. Sup.Ct.1980), *modified*, 85 A.D.2d 709, 445 N.Y.S.2d 830 (1981); *Russo v. Iacono*, 73 A.D.2d 913, 423 N.Y.S.2d 253, 254 (1980); *Cahoes Housing Authority v. Ippolito–Lutz, Inc.*, 65 A.D.2d 666, 409 N.Y.S.2d 811, 812 (1978), *aff'd*, 49 N.Y.2d 961, 428 N.Y.S.2d 948, 406 N.E.2d 803 (1980); and *Lebrecht v. Orefice*, 199 Misc. 1025, 105 N.Y.S.2d 318, 320 (1st Dept., App.Term, Sup. Ct.1951). In *Lebrecht*, which was decided prior to the enactment of § 5535, the court held, at *id.*, in reference to a predecessor of the N.Y. Law, that

> [t]o hold that the interposition of a counterclaim is not the commencement of an action within the meaning of Section 23, C.P.A., would tend to discourage a defendant from interposing a counterclaim in accordance with the policy of the law since by counterclaiming he might lose rights which he would possess if instead he commenced a separate action against the plaintiff. In the absence of language indicating a legislative intent that Section 23, *supra*, shall be inapplicable to counterclaims, this court is of the opinion that Section 23 applies equally to complaints and counterclaims, since for all practical purposes the counterclaim is the same as a complaint.

We have not found any legislative history indicating the scope of § 5535, and thus we have not found any language indicating a legislative intent that § 5535 should not apply to counterclaims. We therefore agree with the principle that § 5535(a) should apply to counterclaims.

In its initial brief, the Debtor provided us with one case, from yet another jurisdiction, supporting its position that counterclaims are within the scope of § 5535(a), *Cale v. Jones*, 176 Ga.App. 865, 338 S.E.2d 68 (1985). This case tends to support the same conclusion, and the Movant has not cited, nor have we located, a case holding to the contrary as to the effect of the filing of a counterclaim on a savings statute in any jurisdiction.

■ Although we conclude that § 5535 applies to claims raised in counterclaims, the case before us presents a slightly different scenario that has not been addressed by the New York courts. The Debtor in our case claims to have filed an Answer & CC containing a "counterclaim." However, what we believe that the Debtor actually filed was an improper "cross-motion." In *In re Summit Airlines, Inc.*, 94 B.R. 367, 369 (Bankr. E.D.Pa.1988), *aff'd*, 102 B.R. 32 (E.D.Pa. 1989), we stated that:

> [a] "cross-motion," unless itself accompanied with all of the adornments required by B.R. 9014 and Local Bankruptcy Rule 9014.1, is never a proper pleading. For unless it is filed with such enclosures, its presentation deprives other interested parties of the notice and opportunity to respond to which they are entitled as to any motion which is properly filed on its own.

In our March 5, 1996, order we dismissed what the Debtor referred to as a "counterclaim" as an improper pleading, because we believed that was properly characterized a "cross-motion." Further, even if the Answer & CC had been in the form of an adversary proceeding, we noted that the Trustee was improperly not named as a party plaintiff in a claim made on behalf of a Chapter 7 estate. *See, e.g., Krank v. Utica Mutual Ins. Co.*, 109 B.R. 668, 669 (E.D.Pa.), *aff'd*, 908 F.2d 962 (3d Cir.1990); and *Cain v. Hyatt*, 101 B.R. 440, 441–42 (E.D.Pa.1989). The question is whether these rather significant deficiencies preclude our assessment of the An-

swer & CC as a pleading sufficient to give rise to § 5535(a).

At this juncture, we note a distinction between the statutory language used in the N.Y. Law and that appearing in § 5535(a). The N.Y. Law only references an "action" as a necessity to trigger that savings statute, while § 5535(a) uses the terms "civil action or proceeding." "Proceeding" is a term that is defined more broadly than "action." *See* BLACK'S LAW DICTIONARY 1083–84 (5th ed. 1979) ("Term 'proceeding' may refer not only to a complete remedy but also to a mere procedural step that is part of a larger action or special proceeding" ... It also includes "[a]n action ... the entire course of an action at law or suit in equity from the issuance of the writ or filing of the complaint until the entry of a final judgment, or may be used to describe any act done by authority of a court of law and every step required to be taken in any cause by either party.... 'Proceeding' means any action, hearing, investigation, inquest, or inquiry ... in which, pursuant to law, testimony can be compelled to be given.").

 It therefore appears that the Pennsylvania legislature made not only a conscious decision to pattern the Pennsylvania savings statute after the New York savings statute, but also it intended to make the Pennsylvania saving statute even broader by using the statutory language "civil action or proceeding" rather than simply using the term "action." Moreover, the term "proceeding" in § 5535 is obviously not meant in the sense of an "adversary proceeding," or a "case within a case," in the bankruptcy court. Rather, what was intended was a generic use of the term "proceeding," which applies to any procedural steps, measures, or actions arising in a case. Although it was an improper pleading which possibly did not constitute the filing of an "action," we find it very difficult to conclude that the Answer & CC of the Debtor in issue did not fit within the broad definition of a "proceeding" which appears in § 5535(a).

We also make note of a recent Third Circuit Court of Appeals opinion dealing with facts reminiscent of *Johnstone*, addressing a somewhat similar problem regarding the running of a statute of limitations, *McDowell v. Delaware State Police*, 88 F.3d 188 (3d Cir.1996). In that case, the *pro se* plaintiff filed with the clerk of the district court a pleading denominated as a "Motion for Compensation," of which the Court stated "[i]n substance, if not form, appeared to be intended as a complaint." *Id.* at 189. The plaintiff had filed this "Motion for Compensation" within the two-year limitations period, but minus the applicable filing fee, and he did not file an application to proceed *in forma pauperis* until some fourteen months later, outside of the limitations period. *Id.* at 190.

The *McDowell* court agreed with the district court's conclusion that the filing of this document constituted a "complaint" filed within the limitations period. *Id.* at 191. However, that court did not agree with the district court's dismissal of the complaint merely because the plaintiff did not file his request to proceed *in forma pauperis* in a timely fashion. *Id.*

Although *McDowell* did not address a situation involving a savings statute, it did provide some guidance as to how the court would handle the situation before us. The court focused on two factors, which are both clearly satisfied in our case, stating "[n]otably, the improperly captioned complaint was served on the defendants and alleged sufficient facts to put defendants on notice of McDowell's claims." *Id.* at 192. The Debtor, in our case, properly served the defendant and the court on March 4, 1996, with its Answer & CC, containing five pages of facts which were almost identical with the language of the Complaint filed on March 12, 1996.

The Debtor's final argument, which we consider to be supported to some degree by *McDowell*, references 42 Pa.C.S. § 5503, which provides, in pertinent part, as follows:

Commencement of matters

(a) General Rule. A matter is commenced for the purposes of the chapter when a document embodying the matter is filed in an office authorized....

The Debtor argues that it filed a document, the Answer & CC, with an office authorized to accept a complaint, the Clerk of the Bank-

ruptcy Court. Although the pertinent language that we are focusing on in § 5535 is "a civil action or proceeding" not "a matter is commenced," the conclusion in *McDowell,* by interpreting the document filed in a broad sense, lends additional support to the Debtor's argument.

■ We must also note that just because the Answer & CC was an improper pleading and the Trustee was erroneously omitted as a party to the Answer & CC do not preclude the invocation of § 5535(a) as to that document. We believe that these sorts of defects are exactly the types of procedural deficiencies leading to termination of a matter which fall within the broad scope of § 5535(a). Again, we look to the Third Circuit Court of Appeals' interpretation of the purpose of § 5535, which is that, "[i]n most instances where the dismissal is for a reason unrelated to the merits, limitations will not bar a new suit ..." *Stinson, supra,* 972 F.2d at 63. Clearly, our dismissal of this improper pleading was not related to its underlying merits. Also, the dismissal did not fall within either of the two exceptions listed in § 5535(a)(2), *supra, i.e.,* the case in issue is not a personal injury action and the Answer & CC was not dismissed for failure to prosecute it, which would have taken the claims outside of the scope of § 5535(a)(1).

The Second Circuit Court of Appeals, in addressing the N.Y. Law's predecessor, stated that "[w]here the parties to the second action are identical in interests with the parties to the first, Section 23 applies; thus a trustee in Bankruptcy may be joined as co-plaintiff with the bankrupt in the second action." *Producers Releasing Corp., supra,* 184 F.2d at 1023. In *Carrick v. Central General Hospital,* 51 N.Y.2d 242, 434 N.Y.S.2d 130, 133, 414 N.E.2d 632, 635 (1980), interpreting the N.Y. Law, the court stated that "[t]he fact that the prior action was so defective as to be 'tantamount to no suit whatsoever' simply does not preclude the use of that remedial provision to revive an otherwise time-barred cause of action, provided of course that a prior timely action, however flawed, actually was commenced ..." We find these decisions, though not binding on us, to be persuasive in character-izing the Answer & CC filed as giving rise to application of § 5535(a).

■ The Movant cites a few cases, notably *Cardio–Medical Associates, Ltd. v. Crozér–Chester Medical Center,* 721 F.2d 68, 77 (3d Cir.1983); *Sabo v. Parisi,* 583 F.Supp. 1468, 1471 (E.D.Pa.1984); and *In re Fricker,* 192 B.R. 388, 392 (Bankr.E.D.Pa.1996), in support of an argument that § 5535 is not available to the Debtor because F.R.Civ.P. 41(b) precludes its invocation. In this regard, the Movant argues that our Order of March 5, 1996, dismissing the Answer & CC as an improper pleading operated as an adjudication upon the merits of the claims contained therein, pursuant to F.R.Civ.P. 41(b), because our order did not specify that the dismissal was without prejudice or that the order was not an adjudication upon the merits. Therefore, the Movant concludes that, because there *has* been an adjudication upon the merits, the savings statute is not available under § 5535(a)(2)(ii).

We do not agree with the Movant's reasoning, and we reject this argument. In our March 5, 1996, Order, we dismissed the Answer & CC as an improper pleading and further stated that any claims against the Movant must be prosecuted by the Trustee. We do not think that this language in any way indicates that this dismissal was with prejudice or that it was a dismissal on the merits of the claims stated therein. We again find support in *Johnstone, supra,* at *1, where the court found that the denial of the "Motion for Recovery of Property" filed by the plaintiff as an improper pleading constituted its dismissal without prejudice, and did not constitute a dispositive adverse adjudication of the sort which § 5535(a)(2)(ii) states is excluded from the tolling effect of § 5535(a)(1).

The cases cited by the Movant are inapposite. Neither *Cardio–Medical* nor *Fricker* involved nor discussed savings statutes. *Cardio–Medical* addressed only the issue of whether the plaintiffs were able to revive their previously-waived right to a jury trial after their original complaint was dismissed. 721 F.2d at 76–77. *Fricker* involved a situation where a prior identical proceeding filed in an earlier bankruptcy case was dismissed

for failure to prosecute. This court nevertheless refused to dismiss a subsequent complaint in a later bankruptcy case on the basis of *res judicata.* 192 B.R. at 394–95. The instant Answer & CC was summarily dismissed because it was not a proper pleading, not because of neglect or the failure of the Debtor to prosecute it.

The Pennsylvania savings statute therefore applies, and we conclude that the Debtor could overcome the bar of the applicable four-year statute of limitations under its terms.

### D. CONCLUSION

An Order denying the Motion at issue will therefore be entered.

### ORDER

AND NOW, this 14th day of August, 1996, upon consideration of the Defendant's Motion for Summary Judgment ("the Motion") in its favor in the above-captioned proceeding ("the Proceeding"), and after careful review of the parties' various briefs, it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED.

2. A further report on the status of the mediation of the Proceeding remains scheduled on

THURSDAY, AUGUST 22,
1996, at 9:30 A.M.

and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.

3. The trial of this proceeding remains scheduled on a must-be-tried basis before this court on

THURSDAY, SEPTEMBER
12, 1996, at 9:30 A.M.

and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106. Counsel are attached for trial on this date.

4. A status hearing on the Debtor's main case, to be attended by the Trustee, will also be conducted on the date of the trial, because any recovery by the Debtor in the Proceeding would apparently render this case an asset case.